# Newman *v.* The State.

### *Indictment for Burglary.*

1. *Admissibility of confessions.* — The confessions of the prisoner in this case, who was "a negro boy about eighteen years old, of ordinary intelligence," were held inadmissible, because not made voluntarily, on proof that they were made to the officer who had just arrested him on a charge of burglary, in the presence of the prosecutor, who had identified some of the stolen articles found in his box, and who said to him : " You are very young to be in such a difficulty; there must have been some one with you who is older, and I, if in your place, would tell who it is; it is not right for you to suffer the whole penalty, and let some one who is guiltier go free; it may go lighter with you ; " and also in the presence of his employer, with whom he had been living for two years, and who said to him : " This is mighty bad ; they have got the ' dead wood ' on you, and you will be convicted ; " " and also said something about ' owning up,' and that he could "have nothing to do with any one who had acted so badly, and if he had anything to say as to his helping him in the difficulty, to do so."

2. *Competency of presiding judge.* — On a trial under an indictment for burglary, it is no objection to the competency of the presiding judge (Rev. Code, § 635) that he is connected by marriage with the prosecutor, who is the owner of the building charged to have been broken and entered.

FROM the Circuit Court of Henry.

Tried before the Hon. J. McCALEB WILEY.

THE indictment in this case charged that the prisoner, " Thomas, *alias* Tom Newman, broke into and entered the store of J. D. Freeman & Co., which said firm was composed of J. D. Freeman and Ephraim Oates, and in which said store merchandise of value was and is kept for use, sale, or deposit, with intent to steal." " On the trial," as the bill of exceptions states, "the State introduced J. D. Freeman as a witness, who testified in substance as follows : The firm of J. D. Freeman & Co. is composed of Ephraim Oates and myself. We carry on a family grocery and confectionery in the town of Abbeville, in said county, and keep goods of value for sale in said store. On the morning of the 2d day of May, 1872, I opened and went into the store at the usual time, and, on entering, found that the back door had been forced open during the night. I then proceeded to examine the goods, and found that a quantity of cigars, tobacco, coffee, flour, money, and other things had been taken therefrom. I estimated that the money, with the value of the goods lost, amounted to about $35. A few days afterwards, I sued out a warrant against the defendant, and, in company with the sheriff and one J. W. Stokes, went to the house occupied by the defendant, who was then in the employment of said Stokes, and was living in a small house on his place. The sheriff and I entered the defendant's house, and sent said Stokes to the field where he was at work, to bring him to the house. In a short time they came into the house together, and I told the defendant that I wanted to examine

[Newman *v.* State.]

his box or chest; that I thought he had some of my goods in it. He denied having the goods, and gave us the key to his box or chest. We opened and examined said box, and found it to contain about half a box of cigars and some tobacco, which I at once recognized as a portion of my stock. The sheriff then arrested the defendant under the warrant which he had against him. I then asked the defendant where he got the tobacco and cigars; and he replied that he got the cigars from Mr. Asher, and the tobacco from Mr. J. M. Calloway. He was then informed that Mr. Asher had no such cigars, and Mr. Calloway no such tobacco, and that he would have to prove that he got the cigars and tobacco from them. I then said to the defendant, ' These cigars and this tobacco are mine; I will identify them, and you had as well own it.' The witness then proceeded to state the confession of defendant, made at the time, and under the above circumstances; which objection was overruled, and the defendant excepted. The witness then proceeded to state the following : ' After the above conversation between the defendant and myself, he stated to me that he had got the goods out of my house; that he and his brother, while standing at Kimbrough's well, heard a noise over at the store; that they went over there to see about it, and found the back door of the store open, and he went in, and took the cigars and tobacco.' After the above, I told defendant, ' You are very young to be in such a difficulty as this, there must have been some one with you who is older than you, and I, if in your place, would tell who it is; it is not right for you to suffer the whole penalty, and let some one who is guiltier go free; that it might go lighter with him.' The witness then proceeded to state other confessions made by defendant to him at this time; but the court, *ex mero motu*, refused to allow the witness to state such confessions; to which the defendant excepted. The witness then testified, ' I think this conversation took place after the confession hereinbefore set out.' "

" The State then introduced said J. W. Stokes as a witness, who testified as follows, in substance : ' On seeing the defendant in possession of cigars and tobacco, my suspicions were aroused against him, and I thought that he had something to do with, or knew of the burglary which had been recently committed. The defendant was in my employ at the time, and was living in a small house on my premises. I communicated to J. D. Freeman certain facts relative to some cigars and tobacco which I saw in the defendant's box, and he and the sheriff and myself, after he had procured a warrant for the defendant's arrest, went to the defendant's house. The sheriff and said Freeman went into his house, while I went to the field after him. While coming from the field with him, I

told him that Mr. Freeman was at his house, and wanted to examine his box, and see whether he had any of his property; that he suspected him of having some of his goods. Defendant replied that he had nothing belonging to Mr. Freeman, and that he was willing for him to look and see. On arriving at the house, defendant gave up the key to his box; and we found, on examination, that said box contained a lot of cigars and tobacco, which said Freeman identified as his. I then remarked to the defendant, " Tom, this is mighty bad, they have got the dead wood on you, and you will be convicted; " and asked him where he got the cigars and tobacco; to which he replied, that he got the cigars from Mr. Asher, and the tobacco from Mr. Calloway. I then told him that he would have to prove where he got them, and that said Calloway had no such tobacco; and said something to him about owning up. The defendant then stated that he and his brother, while standing at Kimbrough's well, heard a noise, looked over the fence, saw the store door open, went over there, and went in; that he took the cigars and tobacco, and his brother took the money. We then sent said Freeman to obtain a warrant against defendant's brother; and about half an hour after he had left, the sheriff took defendant, and started with him to jail. After we had left the house, and were at the gate, I told defendant that he had been living with me nearly two years; that there was no necessity for him to have stolen the cigars and tobacco, as I had always furnished his tobacco; that we would then separate; that I could have nothing to do with any one who had acted so badly, and, if he had anything to say as to my assisting him in the difficulty, to do so. Defendant then proceeded to confess, that his brother bored the hole, and forced open the door, and he watched for him while this was being done; that they entered the store, and he took the cigars and tobacco, and his brother took the money.' The defendant moved the court to exclude this confession; the court overruled the motion, and the defendant excepted.

" On cross-examination, said witness testified as follows : ' The defendant is a negro boy about eighteen years of age, and of only ordinary intelligence. I was present, and heard the conversation which took place between said Freeman and the defendant. I think the language addressed by said Freeman to defendant, to wit : " You are very young to be in such a difficulty as this; there must have been some one with you who is older, and I, if in your place, would tell who it was; that it was not right for him to suffer the whole penalty, and let some one who is guiltier go free; that it might go lighter with him," — was used before defendant had made any confession at all, and before he had acknowledged anything.' The

[Newman *v.* State.]

defendant then moved the court to exclude such and every confession which had been admitted against him ; the motion was overruled, and the defendant excepted."

The witness Freeman stated, on cross-examination, " that he had married the niece and granddaughter of the presiding judge ; " and the defendant thereupon, " by his counsel, suggested the incompetency of the judge to try the case, on account of his relationship to one of the parties, and moved to discontinue the trial." The court overruled this motion, and the defendant excepted. After conviction, the defendant renewed his objection to the competency of the presiding judge, and excepted on that ground to the sentence and judgment of the court.

W. C. OATES, for the prisoner.

BEN. GARDNER, Attorney General, *contra.*

PECK, C. J. — Before any confession can be received in evidence in a criminal case, it must be shown that it was voluntary. 1 Greenlf. Ev. § 219. A confession obtained from an accused person, in the custody of his accusers, " by the flattery of hope, or the torture of fear," is not, in contemplation of law, voluntary, and should not be received as evidence of guilt, and no credit ought to be given to it. The books are full of examples and instances, showing us in what cases confessions have been held to be inadmissible, as not voluntarily made. Thus, where the constable who arrested the prisoner said to him, " It is of no use for you to deny it, for there are the man and boy who will swear they saw you do it." So, where the prosecutor said to the prisoner, " Unless you give me a more satisfactory account, I will take you before a magistrate." So, also, where a girl, thirteen years old, was charged with administering poison to her mistress, with intent to murder, and the surgeon in attendance had told her, " It would be· better for her to speak the truth," it was held that her confession thereupon made, was inadmissible. So, again, where the prisoner's superior in the post-office said to the prisoner's wife, while her husband was in custody for opening and detaining a letter, " Do not be frightened ; I hope nothing will happen to your husband beyond the loss of his situation," the prisoner's subsequent confession was rejected, it appearing that the wife might have communicated this to the prisoner. These. are some of the cases given, in which confessions were rejected on the ground that they were not voluntarily made. 1 Greenl. Ev. § 220, and notes.

Now, comparing the circumstances under which the prison-

[Newman *v.* State.]

er's confessions were made with the cases cited, it seems to me his confessions must be rejected as involuntary. He must be supposed to have been alarmed by what was said to him, and thereby induced to believe the parties into whose hands he had fallen could and would, by some means, effect his conviction, and that the best thing he could do was to make a confession. This, I think, is clearly to be inferred from what was said to him by the prosecutor and the witness Stokes. After the prisoner's box had been examined, and cigars and tobacco found, which the prosecutor identified, and claimed as belonging to him, the witness Stokes said to prisoner, "Tom, this is mighty bad; they have got the ' dead wood ' on you, and you will be convicted;" and, at the same time, said something to him about "owning up." This witness, with whom the prisoner had been living for about two years, also said to prisoner he could have nothing to do with one who had acted so badly, and if he, prisoner, had anything to say as to his assisting him in the difficulty, to do so. The prosecutor, who claimed the articles, the cigars and tobacco found in the prisoner's box, said to him at the same time, " You are very young to be in such a difficulty as this; there must have been some one with you who was older, and I, if in your place, would tell who it was; it is not right for you to suffer the whole penalty, and let some one who is guiltier go free; that it might go lighter with him." I have no hesitation in saying that confessions, obtained under such influences, ought not to be regarded as voluntary, and should be rejected. When it is considered that the prisoner is a negro boy, about eighteen years old, of ordinary intelligence, and necessarily ignorant, suddenly arrested and in custody, charged with a grave offence, and surrounded by the prosecutor and others, who had been active in procuring his apprehension, no one can understand the extent of the influence that may have been produced on his ignorant mind by what was said to him. Most probably, he was induced to believe that, by making a confession, in the language of the prosecutor, " it would go lighter with him." The objection to the admissibility of the prisoner's confessions, obtained under the circumstances disclosed in the bill of exceptions, should have been sustained.

2. The objection made to the competency of the presiding judge was properly overruled. He was not interested in the cause, nor related to either of the parties. Revised Code, § 635. His relation to the prosecutor did not affect his competency.         Judgment reversed and remanded.