MONK *v.* STATE.

Opinion delivered September 24, 1917.

1. LARCENY—ACTS CONSTITUTING—STEALING AND KILLING HOGS.— Hogs were stolen, killed and carried to market and sold by G. and R. Appellant previously consented to the caption and asportation of the hogs, and participated in dressing and carrying the same to market; *held,* appellant could properly be indicted and convicted as a principal for the larceny of the hogs.

2. EVIDENCE—CRIMINAL INTENT—EVIDENCE PROVING COMMISSION OF OTHER CRIMES.—Evidence which tends to show guilty intent in the

commission of a crime charged is competent, even though such evidence also tends to prove the commission of a crime other than the one charged in the indictment.

3. CRIMINAL LAW—INSTRUCTIONS—REASONABLE DOUBT — PRESUMPTION OF INNOCENCE.—Where the trial court told the jury to acquit, if they entertained a reasonable doubt of defendant's guilt, it is not prejudicial error to refuse to instruct on the presumption of the defendant's innocence, which continues until guilt is established beyond a reasonable doubt.

4. CRIMINAL LAW—REVERSAL OF CONVICTION—HARMLESS ERROR.—A judgment of conviction will not be reversed, unless prejudicial error was committed by the trial court.

Appeal from Jefferson Circuit Court; *W. B. Sorrells,* Judge; affirmed.

*S. J. Hunt* and *Rowell & Alexander,* for appellant.

1. The evidence does not support the verdict. The court should have given the instruction asked as to the presumption of innocence. 1 Greenleaf on Ev., par. 34.

2. It was error also to refuse to give No. 4 as to reasonable doubt. May's Cr. Law, par. 277; 25 Cyc. 18; 179 S. W. 568.

3. To constitute larceny there must be a felonious intent, and the court erred in refusing instruction No. 6 asked. 60 Ark. 5.

4. Robinson was an accomplice and his testimony is not corroborated. 109 Ark. 498; 108 *Id.* 447.

If appellant believed the hogs belonged to Ed Robinson, he was not guilty of larceny. 96 Ark. 149; 70 *Id.* 204; 72 *Id.* 640.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1. On the whole the evidence is ample to sustain the conviction. Ed Robinson's testimony was corroborated. 64 Ark. 247.

2. There is no error in the instructions. The trial court is not required to duplicate instructions as to reasonable doubt, innocence, etc. 72 Ark. 384; 74 *Id.* 33.

3. Instruction No. 4 was properly refused; it was not the law. Larceny consists of two elements—the tak-

ing and carrying away. If appellant was present, aiding and abetting, he was guilty. 32 Ark. 727, 733.

4. There is no error in the other instructions given or refused.

5. Oscar Parnels' testimony was competent. 72 Ark. 586; 75 *Id.* 427.

SMITH, J. Appellant was convicted of grand larceny, alleged to have been committed by stealing two hogs, the property of W. H. Robinson. Under the allegations of the indictment, he stood charged as principal offender, and by this appeal he questions both the sufficiency of the evidence and the correctness of the instructions under which the case was submitted to the jury, and also the action of the court in admitting, over his objection, certain evidence.

The evidence on the part of the State may be summarized as follows: One Ed Robinson testified that, on the morning when the hogs in question were killed, appellant, at witness' request, killed one of his hogs and dressed it. Thereafter, appellant and his son, a seventeen-year-old boy named Garland, hunted in the woods for other hogs to kill as the property of witness. They failed to find the hogs, and appellant left for Jeff Springs to sell some beef there. Garland Monk, the boy, continued the search, and found and killed the hogs in question. After killing them, the mark was altered, and the hogs were dragged into the woods. Witness and Garland Monk then went to appellant's home to get appellant's wagon and team to haul the hogs to an old out-house to dress them. Appellant was at home, and knew what they were doing, and, although he was not present when witness and Garland commenced cleaning the hogs, appellant arrived on the scene before that operation was completed and assisted in its performance. These hogs did not belong to witness, and appellant knew that fact. The hog which did belong to witness was carried to appellant's house and cleaned there by appellant himself. All the hogs were loaded into appellant's wagon after they were

dressed for market, and that night appellant left home with these hogs between 12 and 1 o'clock, and carried them to Pine Bluff, where he sold them to a butcher for $35. W. H. Robinson, the owner of the hogs, missed them, and made search for them, and found a puddle of blood where the hogs had been killed. He found tracks which he thought were made by three different people. The owner of the hogs tracked the wagon through a snow which had recently fallen to appellant's house, and was told by appellant, when inquiry was made in regard to the hogs, that no hogs had been hauled in his wagon for two years. W. H. Robinson went to Pine Bluff, and found the butcher who had purchased the hogs, one of which had not been sold and was still on hand, and recognized his mark on the hog notwithstanding the hog's ear had been mutilated to some extent.

Appellant admitted having killed one of Ed Robinson's hogs, and his search that morning for other hogs, and admits hauling the hogs alleged to have been stolen to Pine Bluff and selling them there. But he says he did this for Robinson, and did not suspect that he was being duped into disposing of stolen property. He contends, also, that the proof does not show that he was present when the hogs were killed, and that, therefore, if guilty at all, it could only be as an accessory after the fact, and, as such, he could not be convicted under an indictment charging him with the crime of larceny as a principal offender. Appellant explained his midnight departure with the hogs by saying that it was necessary to do this to arrive at Pine Bluff early in the morning, which was the most favorable time for selling fresh meat. He denied being present when the hogs were killed, and offered explanations of the various incriminating circumstances against him, his explanations being sufficient to relieve his acts of their criminality had they been accepted by the jury.

There was other evidence which tended to contradict, and also to corroborate, the testimony recited.

(1)   In the case of *Friend* v. *State,* 109 Ark. 498, it was held that one not present when an offense is committed, can not properly be indicted as a principal, but, if indicted at all, must be indicted as an accessory.   And in the case of *Hughey* v. *State,* 109 Ark. 389, it was held that, when a defendant was charged with the larceny of a cow, but was not present aiding, abetting and assisting in stealing the animal, but merely encouraged another to steal cattle generally, the defendant was, at most, an accessory before the fact of the larceny, and could not be convicted of larceny as a principal.   These cases cite a number of other opinions of this court to the same effect. Appellant invokes the doctrine of these cases to sustain his contention that he can not be convicted under the indictment in this case, for the reason that the proof shows that he was not present when the hogs were killed, and that, consequently, no guilty knowledge beforehand, or subsequent participation thereafter, could make him guilty as a principal offender.   But, as appears from the testimony recited above, there was evidence to support the finding that appellant was a party to the conspiracy to steal the hogs, and, although there was such asportation of the hogs before appellant appeared on the scene as would have been sufficient to sustain a conviction of larceny against both Ed Robinson and Garland Monk, still the asportation was not fully completed until appellant did appear and participate in the consummation of the crime.   If there was a corrupt understanding between the parties at all, it went, not merely to killing the hogs, but extended to their final sale.   Dressing and cleaning the hogs, and carrying them to Pine Bluff, was a continuation of the asportation, and appellant personally participated in the performance of these essentials.

In the case of *Ridgel* v. *State,* 110 Ark. 606, the following quotation from 2 Wharton's Criminal Law, section 1165, was approved:   ''In larceny a party can not be convicted as a principal unless he were actually or constructively present at the taking or carrying away of the goods. His previous consent to or procurement of the caption and

asportation will not, at common law, make him a principal.'' And it was also there said that, to constitute larceny, there must be a felonious asportation of the goods as well as a felonious taking.

The record in the present case shows, not merely a previous consent to or procurement of the caption and asportation, but an actual personal participation in one of the essential elements of the crime, and we hold, therefore, that appellant was properly indicted.

(2) Exceptions were saved to the action of the court in permitting a witness, Oscar Parnell, to testify that shortly before the larceny of the hogs in question, W. H. Robinson lost four other hogs, and the witness testified that he had bought, in Pine Bluff, from appellant, three hogs corresponding to the description of three of the four hogs which Robinson had lost. It must be admitted that this testimony tended to show that appellant had also stolen those hogs, thereby committing a separate offense. He admitted taking the hogs, here alleged to have been stolen, to Pine Bluff, and selling them, but he says he did so under the honest belief that Ed Robinson, for whom he carried the hogs, was, in fact, their true owner. It is well established by numerous decisions of this court, that evidence which tends to show guilty intent in the commission of a crime charged is competent even though such evidence also tends to prove the commission of a crime other than the one charged in the indictment. *Howard* v. *State,* 72 Ark. 586.

(3) Appellant requested the court to give the following instruction: ''The law presumes the defendant to be innocent, and this presumption continues with him in the progress of the trial, and protects him from conviction until it is overcome by evidence which establishes guilt beyond a reasonable doubt.''

This instruction was not given; but the court gave a correct instruction on the subject of reasonable doubt, and the jury was told to acquit the defendant if a reasonable doubt was entertained as to his guilt. Was error

committed in failing to charge upon the subject of presumption of innocence?

In Blashfield's Instructions to Juries, vol. 1 (2 ed.), page 583, it is said: "There is a want of unanimity of judicial opinion as to whether the failure to instruct that a defendant is presumed innocent until his guilt is established will constitute reversible error in and of itself, where the court properly and fully instructs the jury on reasonable doubt. It has been so held by the Supreme Court of the United States, and the weight of authority is to the effect that instructions on the question of reasonable doubt, though correctly given, can not be regarded as covering the subject of the presumption of innocence, and that it is error to refuse a separate instruction on the latter subject."

As supporting this text and as constituting the weight of authority, cases are cited from Michigan (*People* v. *Macard,* 73 Mich. 15); Texas (*McCullen.*v. *State,* 5 Tex. App. 577, and *Black* v. *State,* 1 Tex. App. 368); Virginia (*Vaughan* v. *Com.,* 85 Va. 671); and the Federal courts (*Cochran* v. *United States,* 157 U. S. 286, 39 L. Ed. 704, and *Coffin* v. *United States,* 156 U. S. 432, 39 L. Ed. 481).

Cases are cited, however, to support the view that it is not error to refuse to charge as to the presumption of innocence where the court correctly instructs the jury on the doctrine of reasonable doubt.

(4)  We do not stop to determine the correctness of the view that the weight of authority requires the giving of separate instructions on the subjects of presumption of innocence and reasonable doubt. We only announce our conclusion to be that the better rule is otherwise, and in consonance with the policy of this court not to reverse a judgment of conviction unless prejudicial error was committed in the trial leading thereto.

Instructions are given upon both subjects upon the same theory and for the same purpose, *i. e.,* that the jury should base its verdict upon the testimony alone, and should not convict unless that testimony convinced the

jury of the guilt of the accused beyond a reasonable doubt. Section 2387, Kirby's Digest. The courts which accept the view we adopt, do so upon the theory that the accused is given the benefit of the presumption of innocence when the jury is told that a conviction can not be had only when the evidence in the case establishes guilt beyond a reasonable doubt.

The Supreme Court of South Dakota, in the case of *State* v. *Cline,* 27 S. D. 573, reviews the cases on the subject, and says that, in Alabama and in California, the presumption of innocence and reasonable doubt are seemingly treated as synonymous. But whether they are synonymous or not, we think it must be true, as said by the Supreme Court of Kentucky, in the case of *Stevens* v. *Commonwealth,* 45 S. W. 76, that any juror competent to sit upon a trial would know that there was a presumption of innocence if he were told that he could not return a verdict of guilty unless the testimony in the case convinced him beyond a reasonable doubt of the guilt of the accused. As supporting this view, see the cases cited in the South Dakota case above referred to, and see, also, *State* v. *Kennedy,* 55 S. W. (Mo.) 293; *Morehead* v. *State,* 34 Ohio St. 212; *Stevens* v. *Commonwealth,* 45 S. W. (Ky.) 76, cited in the note found on page 1695 of Brickwoods Sackett's Instructions to Juries, vol. 2.

Finding no prejudicial error, the judgment of the court below is affirmed.