GERLACH *v.* STATE.'

4603                                        229 S. W. 2d 37

Opinion delivered April 10, 1950.

Rehearing denied May 8, 1950.

Peter A. Deisch and John C. Sheffield, for appellant.

Ike Murry, Attorney General, and Robert Downie, Assistant Attorney General, for appellee.

HOLT, J. A jury convicted appellant of an assault with intent to rape and fixed his punishment at a term of ten years in the Penitentiary. From the judgment is this appeal.

Appellant has preserved nineteen assignments of alleged errors in his motion for a new trial. His principal defense, if not his only defense, to the commission of the crime, was insanity.

His first three assignments, in effect, question the sufficiency of the evidence to support the verdict. The prosecuting witness, Mabel Reeder, a Negro girl twelve years of age, testified that she had been picking cotton and that at about four o'clock P. M. (October 26, 1948), while she was returning to her home along a highway,

appellant drove up in his automobile, got out and asked her if she knew R. C. Little. She answered that she did and pointed out the field where some of her family were still at work. Appellant then took hold of the witness, put his hand over her mouth, threatened to kill her if she cried out, put her on the floor of his car, drove her into some woods nearby, forced her to submit to him and ravished her against her will. He then took her near her home, put her out of his car, and drove away. The child immediately told her mother and grandmother what had occurred. They examined her and found evidence tending to show that she had been ravished. This evidence was legally sufficient to support the jury's verdict, and in fact, would have supported the greater offense of rape. *Begley* v. *State,* 180 Ark. 267, 21 S. W. 2d 172.

Assignments four and fifteen, in effect, alleged that the court erred in refusing appellant's motion for a continuance made before the trial and again at the close of all the testimony. The court did **not err.**

This record reflects that the crime was committed October 26, 1948, and appellant indicted May 2, 1949. He was first tried on the charge November 1, 1949, and upon a mistrial being declared, he was again placed on trial November 7, 1949, and found guilty, as above indicated. At the time appellant was indicted (May 2, 1949) he was a patient in the Veteran's Hospital in Memphis. He was released from that institution May 13, 1949, and returned to work for the Pekin Wood Products Company in Helena. He testified (quoting from appellant's abstract) "that since his operation and return from the Hospital in May, 1949, he has been normal."

On November 3rd, four days before the trial, appellant presented to the trial court his motion, praying for an order "directed to the Manager of the Regional Office, Veterans Administration, Little Rock, Arkansas, that he be authorized and directed to procure and bring or send to this court immediately, Certified Records of the diagnosis, hospitalization and medical treatment accorded to the defendant, by the Veterans Administration, since the discharge of the defendant from the Army in 1944" and

"that complete diagnosis and medical history be furnished of treatments given to the said Robert L. Gerlach from June 30, 1943, to the time of the discharge from the Army at Hammond General Hospital, Modesta, California, in April, 1944; * * * that the only defense which the defendant, Gerlach, has against the crime charged against him, which trial is to be held Monday, November 7th, is that on account of a diseased mind, he did not know that he committed an assault, and·that at the time of the alleged commission of the crime, he was insane within the meaning of the statutes governing the case.

"In view of the fact that the physician from the State Hospital undoubtedly is being brought into the trial to testify that he made an examination of the defendant, Gerlach, in January, 1949, and further that he was sane at that time, and further that he undoubtedly will testify that the defendant was sane at the time of the alleged commission of the crime, and in view of the defense as above stated, the only means by which the defendant has to defend himself, is to procure from the Veterans Administration the records above prayed, which records contain a complete case history of the defendant as developed in his treatment for a head injury which occurred in the armed forces and subsequently the records of the Veterans Administration will disclose that he was insane at the time of the crime charged.

"It is further moved that this case be deferred or re-set for some subsequent time of trial in the event that it is found that these records cannot be furnished in time for the trial of November 7, 1949."

It thus appears that approximately six months had elapsed from the date the indictment against appellant was returned and the date of trial, November 7, 1949, and the motion for continuance was not filed until four days before the trial. We think it obvious, in these circumstances, that due diligence was not shown on the part of appellant. We have repeatedly held that in order to secure a continuance, as here, proper diligence must be shown, *Bowman* v. *State,* 213 Ark. 407, 210 S. W. 2d 798, and that the granting or refusing of such motion is within

the sound legal discretion of the trial court and this court will not interfere unless abuse of that discretion is shown, *Bailey* v. *State,* 204 Ark. 376, 163 S. W. 2d 141. No abuse of discretion was shown.

Assignments 5, 6, 10, 16, 17 and 18, in effect, charged that the court erred in admitting testimony of witnesses, Fannie Mae McKissick and Dorothy Eady, concerning alleged attempts of appellant to rape them.

The record reflects that at the time of the present trial of appellant (November 7, 1949) two other indictments were outstanding against appellant, one charging rape of Fannie Mae McKissick June 7, 1948, and the other charging the same offense against Dorothy Eady December 10, 1948.

The court overruled appellant's objections to the introduction of this testimony and over appellant's exceptions instructed the jury as follows: ''You are instructed that the testimony which has been introduced in this case concerning alleged attacks by this defendant on the State's witnesses, Fannie Mae McKissick and Dorothy Eady, may be considered by you only in determining the intent of the defendant in this case and for no other purpose and you are instructed that this defendant is on trial for the alleged assault upon the State's witness, Mabel Reeder, only on October 26, 1948, as alleged in the indictment.''

The court did not err, in the circumstances, in admitting the testimony. We have frequently held that evidence of other crimes of a similar nature to the one on trial and recent in point of time is admissible as bearing upon intent or purpose.

In the recent case of *Hearn* v. *State,* 206 Ark. 206, 174 S. W. 2d 452, wherein the defendant had been convicted of an assault with intent to rape, we said: ''This court has repeatedly recognized and declared that evidence of other crimes, recent in point of time, and of a similar nature to the offense then being tried, is admissible as bearing on the question of intent. Some such cases are: *Puckett* v. *State,* 194 Ark. 449, 108 S. W. 2d

468; *Lewis* v. *State,* 202·Ark. 6, 148 S. W. 2d 668; *Monk* v. *State,* 130 Ark. 358, 197 S. W. 580; *Cain* v. *State,* 149 Ark. 616, 233 S. W. 779. These cases involved such offenses as robbery, larceny, homicide, or operating a gambling house. We perceive no good reason why the same rule should not apply to sex crimes; in fact, courts of other states have held that, in sex crimes, evidence of other acts of a similar nature, recent in point of time, is admissible as bearing on the question of intent.'' (Citing cases.)

Appellant next argues that the trial court erred in admitting the following testimony of witness, John Whitney: ''Q. A short time thereafter, did you have occasion to talk to Mabel Reeder, the little girl that was said to have been attacked? A. Yes, sir. Q. Where was she at that time? A. Standing in front of her house. Q. Whose house? A. Mabel Reeder's mother's house. Q. Did she point out to you the woods where this attack is said to have occurred? A. Yes, sir. Mr. Sheffield: We object because we have no idea how long this was after the attack occurred. The Court: The objection is overruled. The testimony will be permitted going to the venue in the case. Mr. Sheffield: Note our exceptions. Q. Did she point out the woods where the attack was supposed to have occurred? A. Yes, sir. Q. Is that in Phillips County? A. Yes, sir. Q. Whose place is it on? A. Vallient Morris'. Q. His place is in Phillips County? A. Yes, sir.''

We cannot agree.

The question of venue was also an issue in the case and all of the above testimony could be properly considered on that issue for the purpose of establishing venue.

Appellant says ''all of this evidence was an attempt to corroborate the evidence of the prosecuting witness by hearsay testimony.'' Our rule is well settled that the testimony of the prosecuting witness (Mabel Reeder here), who was not an accomplice, need not be corroborated. *Bradshaw* v. *State,* 211 Ark. 189, 199 S. W. 2d 747.

Whitney's testimony that appellant's attack upon this child had been discussed in his neighborhood was not

prejudicial or hearsay in the absence, as here, of any evidence concerning what was said about the crime.

On the question of venue, the prosecuting witness positively testified that the appellant seized her, threw her in his automobile and threatened to kill her if she made an outcry. He did this between the cotton field and her home, both of which were well within the boundaries of Phillips County.

This testimony was sufficient to show that the assault to commit rape was actually begun in Phillips County, and that appellant intended to commit that crime. The offense was complete and sufficient to establish venue in Phillips County whether the consummation of appellant's purpose was completed in Phillips County or not.

We said in *Boyett* v. *State,* 186 Ark. 815, 56 S. W. 2d 182: "It is well settled that an assault with intent to rape is an effort to obtain sexual intercourse by force and against the will of the person assaulted, and the intent is to be ascertained from the commission of some act or acts at the time or during the progress of the assault. The force actually used need be of no specific degree or character, but comes within the meaning of the law if it is reasonably calculated to subdue and overcome; nor need it be persisted in until the assailant's design is accomplished; if the assault is actually begun and the intent can be inferred from the acts committed, the offense is complete, notwithstanding the fact that the assailant may, for some reason, relent and forbear from the consummation of his purpose."

In the circumstances, the trial court was correct in giving the following instruction relating to venue: "In this case the question of venue has been raised, that is whether this court has jurisdiction of the case. You are instructed that if you find by a preponderance of the evidence that the assault alleged herein occurred in Phillips County then this court would have jurisdiction, or if you should find from a preponderance of the evidence that the alleged assault started or was commenced in Phillips

County and consummated or completed in the adjoining County of Monroe and that same was a continuing sequence of events, this court would have jurisdiction.''

We have carefully examined appellant's requested Instruction No. 1 on venue and hold that the court did not err in refusing it for the reason that it was incomplete and did not fully declare the law. The court, in the above instruction which it gave, did, however, fully cover the law applicable to this question of venue.

Appellant next contends that ''the court erred in permitting counsel for the State of Arkansas to introduce in evidence the report from the State Hospital for Nervous Diseases which is in the form of a letter addressed to the Hon. Elmo Taylor, Circuit Judge, over the objections and exceptions of the defendant.''

We cannot agree.

Ark. Stats. (1947), § 43-1301, provides: ''The judge shall order the superintendent or supervising officer of the State Hospital to direct some competent physician or physicians employed by the State Hospital to conduct observations and investigations of the mental condition of the defendant, and to prepare a written report thereof. * * * A written report prepared by the physician or physicians employed by the State Hospital shall indicate separately the defendant's mental condition during the period of the examination, and his probable mental condition at the time of the alleged offense. This report shall be certified by the superintendent or supervising officer of the State Hospital, under his seal, or by an affidavit duly subscribed and sworn to by him before a notary public who shall add his certificate and affix his seal thereto,'' and § 43-1302 provides: ''The physician or physicians who prepared the report shall be summoned as witnesses at the trial at the order of the trial judge or at the request of either party, and if summoned shall be examined by the court and may be examined by either party, and a copy of the written report hereby required shall be given in evidence in every case in which the fact of sanity is an issue at the trial.''

The written report in evidence in this case, dated January 10, 1949, about which appellant complains, was prepared and signed by Dr. Kozberg, and certified to by both the examining physician of the State Hospital, Dr. Kozberg, and by the Superintendent of the State Hospital, Dr. Geo. W. Jackson, and filed with the clerk of the court January 12, 1949. We hold not only that there was a substantial compliance with the above statutes, but a literal compliance therewith. Dr. Kozberg, employed by the State Hospital, was a witness and testified in the case, but appellant says "it was improper to corroborate his testimony by the written report of an absent witness," meaning Dr. Geo. W. Jackson, Superintendent of the State Hospital.

The statute provides that the report from the State Hospital "shall be certified by the superintendent or supervising officer of the State Hospital," who was Dr. Jackson, and that a copy of this "written report hereby required shall be given in evidence in every case in which the fact of sanity is an issue at the trial." As indicated, this was exactly what was done in the present case. The statute also provides that "the physician or physicians who prepared the report shall be summoned as witnesses at the trial at the order of the trial judge or at the request of either party." It is not shown, however, that Dr. Jackson was one of "the physicians who prepared the report." If he were not (and in this case it appears that he was not), and if he merely certified the report after Dr. Kozberg actually conducted the examination and prepared it, it was not mandatory on the State to produce Dr. Jackson as a witness. *Smith* v. *State,* 200 Ark. 1152, 143 S. W. 2d 190.

Appellant next contends that "the court erred in sustaining the objection of the State to the questions propounded by the defendant to the witness, Nathaniel Dunnivant," and in this connection, says: "The testimony of Nathaniel Dunnivant was to the effect that he had lived in the same community with the defendant for a number of years, that he knew him well and saw him often; that they had been fellow patients in the Veterans

Hospital. He was asked by an attorney for the State: Q. He was all right? A. I don't think so. Q. You don't think so? A. Not all the time. He was then asked on the part of the defendant: You said you didn't consider him all right, did you regard his mental condition as being poor? The State objected to that question and the objection was sustained by the court. The court then made the observation: This man cannot express an opinion as to the mental condition of a person. He may relate instances and then it is for the jury to decide."

There are many decisions of this court to the effect that the opinion of a nonexpert may be admitted in evidence on the question of the accused's mental condition, provided such nonexpert witness has first shown by his testimony that he possesses information upon which such opinion may reasonably be based. "Whether the information is sufficient for that purpose is a question for the court to decide before it can be admitted," *Griffin* v. *Union Trust Company,* 166 Ark. 347, 266 S. W. 289, and cases there cited.

After reading all of Dunnivant's testimony, we hold that his information, as shown by his own testimony, was insufficient upon which reasonably to base an opinion and the court did not err in refusing to permit him to give his opinion.

We deem it unnecessary to discuss other assignments of appellant. It suffices to say that we have examined all and find them to be untenable.

Accordingly, the judgment is affirmed.

ED. F. McFADDIN, J., concurring. This concurring opinion is for the purpose of emphasizing at length the fact that the appellant's Constitutional Rights have not been invaded.

Article II, § 10 of our State Constitution says: ". . . In all criminal cases the accused shall enjoy the right . . . to be confronted by the witnesses against him . . .". Appellant insists that he was not "con-

fronted'' by Dr. George W. Jackson, Superintendent of the State Hospital, when the letter, bearing Dr. Jackson's signature, was introduced in evidence.

In at least three cases we have considered the above quoted constitutional provision, as related to the report from the State Hospital concerning the mental status of an accused, when the report was furnished under the provisions of Initiated Act III of 1936 (see § 43-1301 et seq. Ark. Stats. 1947). These three cases are Smith v. State, 200 Ark. 1152, 143 S. W. 2d 190; Jones v. State, 204 Ark. 61, 161 S. W. 2d 173; and West v. State, 209 Ark. 691, 192 S. W. 2d 135. In each of these cases we recognized that the report could not be admitted in evidence, unless the physician who made the examination and report was personally present in court to identify the report and there confront the accused. Mr. Justice ROBINS' language in West v. State (supra) is apropos:

''On the trial of the case certain testimony tending to show abnormal mental condition of appellant was introduced. After this testimony had been heard, no official of the State Hospital for Nervous Diseases was offered as a witness, but the lower court, over the objection of appellant's counsel, permitted the prosecuting attorney to read to the jury the report made by the superintendent of the State Hospital for Nervous Diseases as to the mental condition of the appellant. This was error, because, as was stated by us in the case of Jones v. State, 204 Ark. 61, 161 S. W. 2d 173, such proceeding violated the provision of our constitution (Art. II, § 10) guaranteeing to the accused the right to be confronted by witnesses against him and the privilege to cross-examine them. The same rule was announced in Smith v. State, 200 Ark. 1152, 143 S. W. 2d 190.''

Nothing in the majority holding in the present case is at variance with our former cases on this point, because in the case at bar the physician who examined the accused and made the report introduced in evidence was personally present in the trial court and confronted the accused. That physician was Dr. Kozberg. The letter

written by Dr. Kozberg was dated January 10, 1949, and addressed to the Circuit Judge. It read:

"We have completed our examinations in the case of Robert Earl Gerlach, who was admitted to the State Hospital under Act No. 3, and I hereby certify that the following is a true and correct report of my findings in this case:

"DIAGNOSIS: Without psychosis, post-traumatic cerebral syndrome caused by old head injury June 1943 and manifested by headaches.

"1. It is my opinion that Robert Earl Gerlach is mentally competent and responsible at the time of this mental examination, and

"2. It is further my opinion that Robert Earl Gerlach was mentally competent and responsible for his acts at the time of their alleged commission.

> "Very truly yours,
>
> "Oscar Kozberg, M. D.
> "Ass't Superintendent and
> Examining Physician

"Approved: George W. Jackson

George W. Jackson, M. D., Superintendent

"Subscribed and sworn to before me this 10th day of January, 1949

> "Bertie Griffin
> "Notary Public

"My commission expires Jan. 18, 1950"

It will be observed that the letter was signed by Dr. Kozberg and states "it is my opinion." He was the man who made the examination; and he was the man who personally testified and confronted the accused. It is true that the letter bears the notation "Approved: George W. Jackson"; but Dr. Jackson's signature merely indicates that this letter passed through the regular routine of State Hospital correspondence and is the report required

by the Initiated Act. It is clear that the accused was confronted by the witness, Dr. Kozberg, and so no Constitutional Rights of the accused were invaded; and the case at bar is in complete harmony with our previous opinions on this point.