John Frank GIBSON *v.* STATE of Arkansas

CR 73-155                                      505 S.W. 2d 735

Opinion delivered February 25, 1974
[Rehearing denied March 25, 1974.]

*Wm. M. Herndon,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Alston Jennings Jr.,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Appellant, John Frank Gibson, was charged by information with the crime of Assault with Intent to Rape. On trial, Gibson was convicted by the jury and sentence was entered in accordance with the jury verdict of ten years imprisonment in the Arkansas Department of Correction. From the judgment so entered, appellant brings this appeal. For reversal, three points are relied upon which we proceed to discuss in the order listed.

It is first asserted that the court erred in not directing a verdict of acquittal at the close of the case, being, of course, another way of saying that the evidence was insufficient to support the verdict. Pamela Elaine Sullivan, nine years of age at the time of the alleged occurrence, testified that she went back and forth to school on the school bus; that on March 14, 1972, after getting out of school at 3:30 P.M., she caught the bus which took her as far as Stuckey Road. There, she departed from the bus and commenced walking the approximate one-half mile towards her home. A man driving a truck stopped and inquired where she lived and after answering the question, the man invited her to get into the truck, stating that he would take her home, and that he had to go to the store. Instead of proceeding on the road, however, he pulled off on to a dirt road and took her to a shack. From the record:

> "He took me, he got me out and took me into the shack. And he started unzipping his pants and I told him not to. And he said, 'If you don't let me do whatever I want to, I'll hurt you.' And then he rubbed his thing against mine. And then he took me back to the truck, and he made me take off my underwear and he started doing it again."

Following this, he told her to get back in the truck and he

then took her part of the way home. Pamela stated that after being picked up, they passed several people on the road that she knew. The child described the truck[1], described her attacker[2], and appeared to be a very intelligent witness. On either the same night of the occurrence or the next morning, Pamela identified this man from a lineup at the police station. At the trial, she likewise positively identified him as her assailant, and stated that the only difference in his appearance was that he no longer wore his long sideburns.

After being let out of the truck, the little girl went to the home of her grandmother, with whom she stayed until her parents came home from work, and who lived across the street from the parents. She advised her grandmother of what had happened and the latter notified the police. Subsequently, she told her parents about the occurrence and she was taken to a physician, Dr. Albert Johnson of Jacksonville, who examined her. The doctor testified that his findings were consistent with attempted sexual intercourse.[3] There was no penetration, and on cross-examination, when asked if the condition which he found could have been caused by other things, the doctor answered, "Quite possible." Jimmy Hall, 31 years of age and a cousin to Pamela, testified that he saw the little girl and the man riding in the pick-up truck which he described in the same manner as the prosecuting witness.[4] Karen Lynn Wilson, a schoolmate of Pamela, testified that

---

[1]From the record:

"It was an old, black truck, and it had a light blue top, and it had a bedstead behind the cab, and it had two, little pictures on the left side of the windshield of a spider web and a ghost."

Appellant was arrested that night driving a truck of this description.

[2]From the record:

"He was short and kind of plump, or something like that. And he had long side burns, and he had wavy hair, and he had on boots, and he . . . And I told them [the police] about the truck, and I told them what the truck looked like."

[3]From the record:

"Q Now, what condition did you find the vaginal area to be in of this little girl?
A There was redness and irritation of the labia, lips of the vagina.
Q Now, was her hymen ruptured, Doctor?
A No, sir.
Q Would you explain to the jury where the hymen is located in the vaginal canal?
A Well, the hymen is a ring of tissue just at the entrance to the vagina, past the labia. The labia, approximately a half inch or so thick, and just past that is a ring of tissue that we call a hymen, a ring of thin tissue."

[4]Mr. Hall was unable to identify the person that he saw in the truck.

she saw Pamela with a man in a pick-up truck, the man having long "pork chop" sideburns.

Sherrill Jones, another classmate, also testified that she saw "Pam" with a man, and she, on the witness stand, identified appellant as the man she saw with Pamela on that date. She also mentioned that he looked different only to the extent that he did not have the long sideburns down his face. She also had given a description of the person observed in the truck to the police.

Appellant denied the occurrence and used the defense of alibi, i.e., he attempted to establish that he was somewhere else at the time the offense occurred. He admitted having made inconsistent statements to the prosecuting attorney in this respect. His defense was corroborated by his wife, and on the witness stand by Irma Jean Gerbine, his sister-in-law, although she, too, appeared to have made previous inconsistent statements. At any rate, the question of credibility of the witnesses was, of course, a fact question to be decided by the jury. The State's evidence was ample, if believed, to sustain the conviction; in fact, we have said many times that the testimony of the prosecuting witness alone is sufficient to sustain a conviction. See *Gerlach* v. *State*, 217 Ark. 102, 229 S.W. 2d 37. Appellant's contention of error is without merit.

It is next asserted that the State failed to prove the crime of Assault with Intent to Rape as set out in Ark. Stat. Ann. § 41-607 (Repl. 1964). This point is really tied in with the other, and counsel contended at the trial that the proof reflected a "fondling" case rather than a case of assault with intent to rape. See Ark. Stat. Ann. § 41-1128 (Repl. 1964). We do not agree. The testimony of Dr. Johnson relative to the irritated area, in conjunction with the other facts reflected by the evidence, was sufficient to justify the jury in finding appellant guilty of the greater offense. The record does not reveal that any instruction was requested on the offense of fondling a child.

The third and final point for reversal is stated as follows:

"That the State failed to provide the defense with a line-up photograph utilized by the investigating of-

ficers wherein the defendant appeared in the photograph when a Motion for A Bill of Particulars was filed for and on behalf of appellant which was filed to provide the defense essential information and evidence to prepare his defense and that after demand was made for this missing photograph in open court at the time of trial and the failure of the State to produce such photograph was in violation of the appellant's constitutional rights under the Fourteenth Amendment to The United States Constitution under the due process clause and that such failure to produce the photograph was prejudicial to appellant's constitutional rights."

This point relates to the testimony of Sherrill Jones, who, as previously set out, saw Pamela in the truck with a man and who identified Gibson at the trial as the man she saw in the truck. It will be recalled that she testified that the only difference in his appearance (on trial) was the fact that he no longer wore his long side-burns. No questions were asked Sherrill on direct examination as to whether she went to the police station or made any identification there. On cross-examination, in response to a question from defense counsel relative to when she was first asked to make an identification, it developed that she had made an identification at the sheriff's office of a picture of a lineup of five or six men and had picked out appellant as the man she saw in the truck. Counsel made no objection at that time concerning the picture, although conducting quite a lengthy cross-examination, but upon concluding his examination, stated that he would like to have the lineup picture; that a Bill of Particulars had been requested and that such a picture had not been included in the Information turned over to him. He then asked for a directed verdict of not guilty because of the State's failure to give the jury the benefit of all the investigation in the case. The deputy prosecuting attorney responded that defense counsel had been given access to his entire file and had spent two or three hours examining it; further, that he (the State's attorney) did not have any picture of a lineup and had not seen any picture of a lineup, and he further pointed out that under stipulation entered into by counsel, the permitted examination of his file and the written Bill of Particulars furnished counsel, would be accepted in lieu of further dis-

covery. Defense counsel stated that the only reason the photograph was not in the file was because the only person in the photograph that possessed pork chop sideburns was the appellant. A motion for directed verdict was again made, but denied.

We do not agree that prejudicial error has been shown. In the case of *Simmons, et al* v. *United States*, 390 U.S. 377, 19 L.Ed. 2d 1247, 88 S. Ct. 967, the Supreme Court stated that it was unwilling to prohibit the use of initial identification from a photograph, and observed that this procedure had been used widely and effectively in enforcing criminal laws. It was there pointed out that the danger of a conviction based on misidentification could be substantially lessened by cross-examination which exposed to the jury the method's potential for error. The court then said:

> "Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood or irreparable misidentification."

This holding was quoted in our own case of *McClain* v. *State*, 247 Ark. 33, 444 S.W. 2d 99, wherein we held suggested error because of pretrial identification through a photograph to be without merit.

Here, let it be remembered that the photograph observed by Sherrill was either on the same date, or the day after, the alleged crime had been committed, and it was over a year later that the trial of appellant was held. On trial, Sherrill identified appellant in positive terms as being the man she saw in the truck, even though he no longer had his sideburns. Furthermore, she had given a description of the person that she had observed in the truck to the investigating officers before ever seeing any picture, and had had an opportunity to observe him twice, once when he passed her with Pamela in the truck, and once when he travelled toward her on his return. This was the important testimony of this witness. Not only that, but defense counsel's remarks about the

photograph, and his contention that it had been deliberately left out of the file, were made before the jury and that body was entirely aware of his contention. We find appellant's argument to be without merit.

Of course, the prosecuting witness made her identification from the lineup itself and the testimony of the witnesses describing the truck was potent evidence.

It appears from the record that appellant received a fair trial and no prejudicial error occurred.

Affirmed.