METROPOLITAN LIFE INSURANCE COMPANY *v.* SHANE.

Opinion delivered March 6, 1911.

1. LIFE INSURANCE—WARRANTY—USE OF LIQUORS.—Where an application for life insurance, which was made a warranty, stated that the applicant did not "use" intoxicating liquors, it was not error to instruct the jury that the use contemplated was an habitual or customary use, and not an occasional or exceptional use. (Page 135.)

2. SAME—NONPAYMENT OF POLICY—PENALTY AND ATTORNEY'S FEE.—Where, upon the death of the assured, the administrator of the assured sent to the insurance company copies of his letters of administration and bond, and requested that blanks be furnished upon which proof of death could be made, and the company returned the

letters of administration and bond without statement relative to payment, and when sued denied any liability, a finding that demand for payment was made before suit, and that there was. a refusal to make payment, was warranted, and the court was justified in assessing a penalty and attorney's fee under the Acts of 1905, p. 308.  (Page 136.)

3.  APPEAL AND ERROR—PRESUMPTION FROM SILENCE OF ABSTRACT.—Where complaint is made of the ruling of the lower court in refusing to give instructions, it is necessary that the instructions thus refused should be set out in the abstract; otherwise it will be presumed that the ruling of the court ' in rejecting same was not erroneous. (Page 137.)

4.  SANITY—TEST.—One who kills another, knowing right from wrong, is held to be sane unless he acted from an irresistible impulse arising from a defect of will caused by the diseased condition of his mind, and not from mere anger or revenge. (Page 138.)

5.  LIFE INSURANCE—BENEFICIARY SLAYING INSURED.—Where the beneficiary in a policy of life insurance intentionally kills the insured, public policy will deny his right to recover on the policy.  (Page 138.)

6.  TRIAL—ORDER OF ARGUMENT.—Where the plaintiff and an intervener both sought to recover in the same action upon a policy ' of life insurance, it was within the trial court's discretion to determine the order of the argument.  (Page 138.)

Appeal from Clay Circuit Court, Eastern District; *Frank Smith*, Judge; affirmed.

*L. Hunter*, for appellant.

The insured made false answers as to his habits of drinking, and that avoids the policy.  58 Ark. 528; 71 Ark. 295; 72 Ark. 620; 74 Ark. 1; 62 L. R. A. 774; 134 Ill. App. 464; 35 Atl. 179; 81 N. W. 807.

*Spence & Dudley*, for appellant.

The right to open and close is not one of discretion under the law.  Elliott, App. Prac. § 671; Thompson on Trials, vol. 1, § 231; 59 Ark. 140.  The beneficiary took a vested interest in the policy as soon as it was issued.  31 L. R. A. 67.

*J. H. Hill* and *G. B. Oliver*, for appellee.

The ability to distinguish right from wrong is the test as to whether one is liable for homicide.  64 Ark. 523; 54 Ark. 588. A case should not be reversed for harmless error.  133 S. W. 168. The word *use* means *habitual* and *customary* use, not occasional use.  71 Ark. 295; 81 Ark. 205; 89 Ark. 230; 84 S. W. 656; 126

Fed. 360. But if the answer was false, it was not a warranty. Cooley's Briefs on Ins. p. 1931; 58 Ark. 533.

FRAUENTHAL, J. This was an action instituted by D. M. Shane as administrator of the estate of L. V. Shane, deceased, to recover upon a policy of insurance issued upon the life of said decedent. The policy was executed on July 29, 1909, and the wife of the insured, Louisiana Shane, was named as beneficiary therein. The insured was killed on August 29, 1909, by his said wife, who thereupon committed suicide. The suit was instituted against the Metropolitan Life Insurance Company, which issued the policy, and also against Z. B. Harrison, the administrator of the estate of said Louisiana Shane; and in the complaint it was alleged that said Louisiana Shane, the beneficiary named in the policy, had wilfully, unlawfully and feloniously killed said insured, and on that account the said beneficiary had forfeited all rights under the policy, and the estate of the insured was entitled to recover thereon.

The administrator of the estate of Louisiana Shane filed an answer and also an intervention in which he admitted that his decedent had killed the insured, but alleged that at the time she was insane, and on that account not legally liable for said act; and he sought a recovery on said policy because she was named as the beneficiary therein.

The Insurance Company denied all liability on the policy upon the ground that it had issued same by reason of certain false warranties made by the insured which avoided the policy.

The cause was submitted to a jury to determine whether or not the Insurance Company was liable on said policy and also to determine the respective rights of the plaintiff and the intervener to recover thereon in event the Insurance Company was liable. The jury returned a verdict finding that the Insurance Company was liable upon the policy, and also that said Louisiana Shane was sane when she killed the insured; and thereupon the court rendered a judgment in favor of the plaintiff and against the Insurance Company for the amount of the policy and also for the penalty and attorney's fee provided for by the statute. From that judgment both the Insurance Company and the intervener have appealed to this court.

The policy was issued on an application made by the insured

containing answers to questions propounded by the company's medical examiner which were material to the risk, and the truth of which we think was warranted by the assured. The Insurance Company alleged, and now urges, that the insured made certain answers to questions propounded relative to his habits as to the use of intoxicating liquors which were untrue. It claims that the truth of these answers was warranted, and that their falsity avoided the policy. The following are the said questions propounded to and the answers made by the insured: "Q. To what daily or other extent do you use tobacco? Answer. Twenty-five cents a week. Question. Opium or other narcotics? Answer. No. Q. Alcoholic stimulants? Ans. None. Wine or malt liquors? Ans. None." And to the question: "Have you ever used opium, or other narcotics, or ever used alcoholic stimulants, wine or malt liquors or tobacco to any excess? If so, when and for how long? Give particulars," the answer was, "No."

According to the evidence adduced upon the trial, the insured had lived for some years at or near Malden, Missouri, and about five or six years prior to his death he had moved to Rector, Arkansas.

The evidence on the part of the Insurance Company tended to prove that while living at or near Malden he often drank intoxicating liquor until he became under its influence, and that after he moved to Rector he sometimes drank intoxicants and was drunk. But the testimony on the part of the plaintiff tended to prove that while at Malden insured only drank intoxicating liquor occasionally, and that after he moved to Rector and for two years prior to his death he was never seen under the influence of intoxicants, and did not drink intoxicating liquors.

The court in its instructions submitted the question to the jury as to whether or not there had been a breach of the warranty by reason of the use by the insured of intoxicating liquors and of his use thereof to excess, and therein stated to the jury that "the word 'use' in the questions relative to intoxicating liquors means habitual or customary use, and the answers thereto would not be false and untrue if the proof shows only an occasional or exceptional use, even though at several times the assured became visibly intoxicated."

We think that the court committed no error in the instruction which it thus gave to the jury. The above questions and answers relative to the use by the insured of intoxicating liquors, we think, refer to the customary or habitual use thereof, and not merely to an occasional use thereof or an exceptional use to excess. The questions and answers as to his use of intoxicants manifestly refer to his habits in that regard. The habit of a person contemplates a course of conduct which is customary and shows that he has acquired a tendency to pursue that course of conduct from frequent repetitions of the same act. It does not contemplate occasional or exceptional acts.

From the language of the above questions and answers made by the insured in his application for this policy we do not think that it was contemplated that the policy should become void because of an occasional use of intoxicants or because of an occasional excessive use thereof, but only when such use or excess had become a habit by frequent repetitions.

This has been the construction adopted by this court of questions and answers made in applications for life insurance policies similar to those made in the application for the policy involved in this case. *Franklin Life Ins. Co.* v. *Galligan,* 71 Ark. 295; *Mutual Reserve Fund Life Assn.* v. *Cotter,* 81 Ark. 205; *Des Moines Life Ins. Co.* v. *Clay,* 89 Ark. 231. See also *Knickerbocker Life Ins. Co.* v. *Foley,* 105 U. S. 350; *Northwestern Mut. Life Ins. Co.* v. *Muskegon Nat. Bank,* 122 U. S. 501.

It is urged by counsel for the Insurance Company that the court erred in assessing against it a penalty and attorney's fees in pursuance of the statute enacted by the General Assembly of 1905 (Acts 1905, p. 308) ; and this contention is made upon the ground that no demand was made for the payment of the policy prior to institution of this suit. But we think that there was sufficient testimony adduced upon the trial from which the court was warranted in finding that such a demand was made, and that the Insurance Company did not pay the policy because it denied liability. The policy provided no specific time in which payment should be made after the death of the insured. It was therefore payable within a reasonable time thereafter. Immediately after the death of the insured and of his wife letters of administration were taken out on both estates. On September 6, 1909, both

administrators sent to the Insurance Company certified copies of the letters of administration and of their bonds, and requested that blanks be furnished upon which the proof of death could be made. The Insurance Company did not reply to the letters thus sent to it, and subsequently returned the copies of the letters of administration and the bonds without making any statement whatever relative to payment. After waiting for some time in order to hear further from the company and receiving no word from it, the plaintiff instituted this suit on November 26, 1909. Thereupon the Insurance Company made answer in which it denied all liability on the policy. It is not necessary that there should have been a formal demand for payment of the policy before the penalty for its nonpayment would attach. It is only necessary to show facts from which it can be reasonably inferred that the company understood that payment was demanded and that it refused to make same. When the Insurance Company received the certified copies of the letters of administration issued upon the estate of the insured and of the beneficiary, it understood that it was the intention of the administrators to thereby desire and demand payment of the policy. It did not claim that it would pay as soon as it could learn the rightful party to receive payment, but by its conduct in utterly failing to make reply and in subsequently making defense to the suit upon the ground that it was not liable on the policy it evinced that it refused to make payment. The court under these circumstances was warranted in finding that demand for payment was made before suit, and that there was a refusal to make payment by the Insurance Company.

It is contended by counsel for the administrator of the estate of Louisiana Shane that the court committed error prejudicial to the rights of the intervener by refusing to give certain instructions requested by him. These instructions we find from his brief relate to the question of the alleged insanity of Louisiana Shane at the time she killed her husband. But none of these instructions which it is claimed were refused has been set out in the intervener's abstract nor in any abstract of any of the parties. We have repeatedly held that where complaint is made of the ruling of the lower court in refusing to give instructions it is necessary that the instructions thus refused should be set out in

the abstract, otherwise it will be presumed that the ruling of the court in rejecting same was not erroneous.

Intervener also urges that the court erred in giving certain instructions upon the question of the sanity or insanity of Louisiana Shane. The court in effect instructed the jury that if Louisiana Shane at the time she killed the insured knew right from wrong and knew that it was wrong to kill him then she was sane unless at the time, even though she knew right from wrong, she acted from an irresistible impulse arising from a defect in will caused by the diseased condition of her mind and not from mere anger or revenge. The instructions, we think, fully and fairly stated the law relative to the question of the sanity of Louisiana Shane as applied to the testimony adduced on the trial. *Green v. State,* 64 Ark. 523; *Bolling v. State,* 54 Ark. 588.

There was a conflict in the testimony as to the mental condition of Louisiana Shane at the time of the killing; but we think that there was sufficient evidence to warrant the jury in finding that she was sane when she killed the insured, and that she killed him because he would not live with her.

The wilful, unlawful and felonious killing of the assured by the person named as beneficiary in a life policy forfeits all rights of such person therein. It is unnecessary that there should be an express exception in the contract of insurance forbidding a recovery in favor of such person in such event. On considerations of public policy the death of the insured, wilfully and intentionally caused by the beneficiary of the policy, is an excepted risk so far as the person thus causing the death is concerned. As is said in the case of *New York Life Mut. Insurance Company v. Armstrong,* 117 U. S. 591: "It would be a reproach to the jurisprudence of the country if one could recover insurance money payable on the death of a party whose life he had feloniously taken. As well might he recover insurance money upon a building that he had wilfully fired." 4 Cooley's Briefs on Law of Insurance, p. 3153; *New York Life Ins. Co. v. Davis,* 96 Va. 737.

It is urged by counsel for the intervener that the court erred in not permitting him to open and close the argument. This contention is made upon the ground that the burden of proof was on him to show that Louisiana Shane was insane and

not legally responsible for her act at the time she killed the insured. But the court did permit the counsel for intervener to close the argument to the jury, and only allowed the plaintiff's counsel to make the opening statement in the case. In this case both the plaintiff and the intervener were seeking a recovery against the Insurance Company. Under the answer made by the Insurance Company the plaintiff was not entitled to recover without the introduction of testimony. As against the Insurance Company, the plaintiff and the intervener were equally plaintiffs, and each was a defendant against the other as to their rival claims for recovery against the Insurance Company. As each would be entitled to begin and close the argument equally with the other in their actions against the Insurance Company, it was within the sound discretion of the trial court to determine the order of the argument. 1 Thompson on Trials, § 242; 15 Ency. Plead. & Prac. 192. The intervener in this case was given the conclusion of the argument. This, under our statute, is considered more advantageous than the opening, for it is provided that when a party entitled to the opening and conclusion of the argument refuses upon demand of his adversary to open he should be refused the conclusion. Kirby's Digest, § 6196, sub. 6.

Upon an examination of the whole case, we fail to find that any prejudicial error was committed upon the trial of the cause.

The judgment is accordingly affirmed.