JONES *v.* STATE.

4251                                        161 S. W. 2d 173

Opinion delivered April 13, 1942.

62

*Peter A. Deisch,* for appellant.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

SMITH, J.   Appellant was tried under an indictment which charged that, with malice aforethought and after deliberation and premeditation, he had shot and killed one George Miller.  The jury returned the following verdict: "We, the jury, find the defendant, A. T. Jones, guilty as charged in the indictment and fix his punishment at death in the electric chair."  Upon this verdict appellant was sentenced to death, and from that judgment is this appeal.

For the reversal of this judgment it is strongly urged that the court erred in refusing to give appellant's counsel a reasonable opportunity to study and analyze the report made by the officials of the State Hospital for Nervous Diseases upon the question of appellant's sanity.  As that time has now been afforded it will be unnecessary to decide that question; but as the report will, no

doubt or very probably, be used at the retrial of the cause we will discuss the objections made to it.

There was passed, on December 17, 1838, which was shortly after the admission of this state into the Union, an act, which has since been unchanged and which now appears as § 4041, Pope's Digest, reading as follows: "The jury shall, in all cases of murder, on conviction of the accused, find by their verdict whether he be guilty of murder in the first or second degree; but if the accused confess his guilt, the court shall impanel a jury and examine testimony, and the degree of crime shall be found by the jury."

This act has been applied in many cases, four of which appear in the 26th Arkansas Report: *Thompson* v. *State,* 26 Ark. 323; *Allen* v. *State,* 26 Ark. 333; *Trammell* v. *State,* 26 Ark. 534; *Neville* v. *State,* 26 Ark. 614.

It was held in all these cases, and in all subsequent cases which have cited the section quoted, that its provisions are mandatory, and that the death sentence may not be imposed upon one convicted of murder unless the jury found that the accused was guilty of murder in the first degree. In addition to the cases above cited the following are to the same effect: *Simpson* v. *State,* 56 Ark. 8, 19 S. W. 99; *Porter* v. *State,* 57 Ark. 267, 21 S. W. 467; *Carpenter* v. *State,* 58 Ark. 233, 24 S. W. 247; *Carpenter* v. *State,* 62 Ark. 286, 36 S. W. 900; *Lancaster* v. *State,* 71 Ark. 100, 71 S. W. 251; *Clark* v. *State,* 169 Ark. 717, 276 S. W. 849; *Hembree* v. *State,* 68 Ark. 621, 58 S. W. 350.

In the case last cited, the Hembree case, this question, and no other, was discussed, and the question was regarded as so definitely settled that the case is not reported in the state reports, and appears only in the Southwestern Reporter.

Thus the law stood until the rendition of the opinion in the case of *Bettis* v. *State,* 164 Ark. 17, 261 S. W. 46, in which case it was said: "Here the jury in the Ruck case did not expressly name the degree of murder in its verdict of which it found Ruck guilty, but it found him guilty and fixed his punishment at death, thus showing that

they found and intended to find him guilty of murder in the first degree, for murder in the second degree is not punished by death."

The capital sentence imposed in that case was affirmed; but the opinion makes no reference to any of the earlier cases above cited. The opinion does recite that there was no bill of exceptions in the case, and for that reason as the opinion states the presumption was indulged that the jury had been, properly instructed and the verdict returned no doubt conformed to the instructions of the court as to the form of verdict to be returned in the event that the defendant was found guilty of murder in the first degree.

Such instruction and direction as to the form of the verdict was given in the instant case. The charge as to the form of the verdict was as follows: "If, from all the evidence in the case, you find the defendant guilty of murder in the first degree, the form of your verdict should be: 'We, the jury, find the defendant, A. T. Jones, guilty of murder in the first degree, as charged in the indictment, and fix his punishment at death in the electric chair.' Or, if you exercise the option that is conferred by the law on you, you may make the penalty life imprisonment in the state penitentiary."

Notwithstanding this specific direction as to the form of verdict to be used in the event the defendant was found guilty of murder in the first degree, the jury did not find the degree of the homicide.

If it be said that the imposition of the death penalty shows what was intended, it may be answered that a capital sentence may not be imposed by intendment. The mandatory provision of the statute is that to impose that sentence there must be a finding that the defendant was guilty of murder in the first degree. However technical this may appear, it is nevertheless the requirement of the law. Human life is so tenderly regarded by the law that it may not be taken upon a conviction under an indictment charging the crime of murder unless, by the jury's verdict, the crime was found to be murder in the first degree.

The testimony shows, although the indictment does not allege, that the homicide was committed in the attempt to commit the crime of robbery, and the statute provides that a homicide so committed shall be murder in the first degree. But that statute (§ 2969, Pope's Dig.) does not make the provisions of § 4041, Pope's Digest, any the less mandatory.

Subsequent to the opinion in the Bettis case, *supra,* the opinion in the case of *Wells* v. *State,* 193 Ark. 1092, 104 S. W. 2d 451, was delivered. In that case the accused was indicted for murder in the first degree, alleged to have been committed by the administration of poison, and the accused entered a plea of guilty to the crime charged; notwithstanding that plea a jury was impaneled to find the degree of the homicide, as required by § 4041, Pope's Digest.

The court charged the jury in that case that "The defendant in this case has entered his plea of guilty to the charge against him in the indictment; that is, of murder in the first degree. The law provides in such cases that the jury shall be empaneled to assess his punishment." In holding this instruction error it was said: "While it is true that appellant was indicted for murder in the first degree by poisoning which, under the statute, is made murder in the first degree, § 2343, Crawford & Moses' Digest, still the instruction above set out was error under said § 3205, above quoted (4041, Pope's Digest), and the verdict of the jury was bad in that it failed to find the degree of the crime. By § 3205, 'But if the accused confess his guilt, the court shall empanel a jury and examine testimony, and the degree of crime shall be found by such jury,' the court's instruction would not leave it to the jury to find the degree of the crime. After telling the jury that the defendant had entered his plea of guilty to murder in the first degree, the court told the jury that it was 'empaneled to assess the punishment.' And again that the only question for them to determine was 'that of the punishment to be imposed.' And again he told the jury that it was their 'duty now to retire and fix the punishment.' The statute provides that 'the degree of crime shall be found by such jury,' not merely to

fix the punishment or assess the punishment. The instructions in effect told the jury that the defendant was guilty of murder in the first degree and that they could fix his punishment either at death by electrocution or life imprisonment. This was error. The verdict of the jury was defective in that it failed to find the degree of the crime.''

That opinion cited a number of cases hereinabove cited, and quoted from the case of *Lancaster* v. *State, supra,* as follows: " 'This statute was no doubt overlooked by the circuit judge, for under it this court has several times decided that a verdict upon an indictment for murder which does not find the degree of murder is so defective that no judgment can be entered upon it.' "

In the case of *Porter* v. *State,* 57 Ark. 267, 21 S. W. 467, Chief Justice COCKRILL said: "The object of the statute was to make sure that the accused should not be subjected to capital punishment unless the jury specially find that he is guilty of the first degree of murder."

The opinion in the case of *Fagg* v. *State,* 50 Ark. 506, 8 S. W. 829, was written by the same learned judge. In that case the defendant was indicted and tried for murder, and the jury returned the following verdict: "We, the jury, find the defendant guilty of manslaughter, but cannot agree upon the punishment." Upon this verdict the court pronounced sentence for voluntary manslaughter, and that action was assigned as error, for the reason that the verdict did not declare whether the defendant had been found guilty of voluntary manslaughter or involuntary manslaughter. In affirming that action it was said that there was not a scintilla of evidence that the appellant, if guilty at all, was guilty of involuntary manslaughter. Indeed, the contention of the defendant was that the killing was either murder in the first degree or justifiable homicide, and that the jury could not legally return a verdict of manslaughter. But it was said that the accused had acquiesced in that part of the charge at a time when it seemed favorable to him, and that he could not be heard to complain now. No instruction on the question of involuntary manslaughter appears to have

been given. In affirming the action of the trial court in sentencing appellant for voluntary manslaughter the Chief Justice said: "But it is said the court erred in passing sentence on the defendant as for voluntary manslaughter. The verdict did not designate the degree of manslaughter, or assess the punishment. The duty of fixing the penalty devolved, therefore, upon the court. Mansf. Dig., § 2308. On conviction of murder the statute requires the degree of the offense to be found by the jury. Mansf. Dig., § 2284; *Thompson* v. *State,* 26 Ark. 323; *Ford* v. *State,* 34 Ark. 649. It is not so as to manslaughter—it is only necessary that the court should have a certain guide to the intention of the jury. Verdicts receive a reasonable construction in order to reach the jury's meaning, and when that is found, they are enforced as though the intention was express."

It is easily conceivable that a jury might find that, although an accused was not guilty of murder in the first degree, he should, nevertheless, be executed. A general finding that the defendant was guilty of murder as charged in the indictment would permit this to be done if the statute did not require a finding as to the degree of the homicide. Section 4041, Pope's Digest, was passed to deprive the jury of this power, and the law is that the death sentence may not be imposed unless, as Judge Cockrill said in the Porter case, *supra,* the jury "especially find" that the accused is guilty of murder in the first degree.

We may not ignore the statute (§ 4041, Pope's Digest) by saying that it is technical, or highly technical, nor may we ignore it in a particular case where we feel assured that the jury found the accused guilty of murder in the first degree, but did not reflect that finding in the verdict. This for the reason stated by Justice Hart in the case of *Banks* v. *State,* 143 Ark. 154, 219 S. W. 1015, that "The statute expressly requires the jury to ascertain the degree in all cases of murder. Its terms are imperative. The court has uniformly construed it to be mandatory, and, as before stated, it has become a fixed part of our criminal jurisprudence. It is the duty of courts to enforce legislative provisions when the legislature acts within

constitutional limits; and a departure by the courts from imperative rules established by the legislature for the protection of all in order to meet the exigencies of particular cases is an evil not to be thought of, let alone to be acted upon.''

It follows, from what we have said, that the judgment must be reversed and the cause will be remanded for a new trial. *Carpenter* v. *State,* 62 Ark. 286, 36 S. W. 900.

In view of the new trial we take occasion to discuss the report of the officials in charge of the State Hospital for Nervous Diseases, which, in all probability, will again be offered in evidence. Other questions raised in the brief are pretermitted, as they are not likely to again arise.

Anticipating that the defense of insanity would be interposed, appellant was sent to the State Hospital for Nervous Diseases for examination and report. The report made did not conform to the requirements of the statute providing for this examination, in that, while it covered the appellant's mental condition at the present time, it made no finding as to his probable mental condition at the time of the commission of the homicide. The statute provides: ''A written report prepared by the physician or physicians employed by the State Hospital shall indicate separately the defendant's mental condition during the period of the examination, and his probable mental condition at the time of the alleged offense. This report shall be certified by the superintendent or supervising officer of the State Hospital under his seal, or by an affidavit duly subscribed and sworn to by him before a notary public who shall add his certificate and affix his seal thereto.'' Section 11 of Initiated Act No. 3, Acts 1937, p. 1384, appearing as § 3913, Pope's Digest.

However, as the report, although not sworn to as required by law, nor certified under the seal of the supervising officer of the hospital, was offered in evidence by appellant, he is in no position to complain that it did not conform to the provisions of the statute above quoted; but if the report is to be used at the retrial it should be made in conformity with the law.

The statute does not undertake to make the certificate independent evidence; nor could it do so, for the reason that § 10 of art. 2 of the constitution provides that the accused shall be "confronted with the witnesses against him," to the end that they may be cross-examined by him. Section 12 of Initiated Act No. 3, *supra* (§ 3914, Pope's Digest), provides that "The physician or physicians who prepared the report shall be summoned as witnesses at the trial at the order of the trial judge or at the request of either party, and if summoned shall be examined by the court and may be examined by either party, and a copy of the written report hereby required shall be given in evidence in every case in which the fact of sanity is an issue at the trial."

The purpose of this statute is to have the accused, whose sanity is questioned, examined in advance of his trial by competent and impartial and disinterested physicians, who shall make a report upon the sanity of the accused, subject to the right of either the prosecution or the defense to have the physicians who prepared the report summoned as witnesses at the trial for examination and cross-examination. *Brockelhurst* v. *State,* 195 Ark. 67, 111 S. W. 2d 527.

The trial court offered, in this case, to have process issued for the physician who made the report, and this must be done when objection to the use of the report is made, to comply with the provision of the constitution above quoted, that the defendant be "confronted with the witnesses against him." However, the report might be offered as original testimony when this is done by consent or without objection.

For the error indicated, the judgment is reversed, and the cause remanded for a new trial.

GRIFFIN SMITH, C. J., (dissenting). Appellant is a Negro, and so is George Miller, whom he murdered. Miller operated a moving picture show at Helena and was shot in the back of the head while seated in a chair. Appellant's purpose in entering the theater was to rob his victim. This intent was admitted in a signed statement introduced at trial without objection.

The indictment charged murder committed "willfully, feloniously, with malice aforethought, and after deliberation and premeditation."

The jury found appellant ". . . guilty as charged in the indictment, and [we] fix his punishment at death in the electric chair."

We therefore have an express finding that the accused committed murder in the first degree, yet ". . . human life is so tenderly regarded by the law that it may not be taken upon a conviction under an indictment charging the crime of murder unless, by the jury's verdict, the crime was found to be murder in the first degree."

The law's tender solicitude for the so-called rights of this malicious murderer who acted with premeditation and deliberation must rise above the verdict. We must reach for that phantom called technicality and remand the cause to the trial court in order that another jury may add the words "first degree"; and this procedure is adopted notwithstanding the finding so definitely made in language clear and comprehensive—a verdict so explicit that nothing written or said can supplement the meaning or add dignity to the judicial process.

Certainly human life is dear. It is tenderly—even passionately—protected by the law's zealous pronouncements predicated upon the proposition that it is better to let ninety and nine who are guilty escape than that one be unjustly punished. No one challanges the soundness of this policy; nor does the public protest more than momentarily when juries resolve doubt in favor of freedom for malevolent characters against whom the evidence is not convincing beyond a reasonable doubt. These seemingly lucky individuals usually become second or third offenders, and not infrequently gratify their proclivities for bloody butchery as they range at will because of the law's "tender regard" for the crossing of every "t," the dotting of every "i."

William Bettis and Sugin Ruck were electrocuted, according to penitentiary records, June 27, 1924. The verdict condemning Rucks was: "We, the jury, find the

defendant guilty and fix his punishment at death.'' On appeal it was argued that the finding was defective; hence, no judgment could be rendered on it. In affirming the convictions April 14, 1924, this court said [164 Ark. 17, 261 S. W. 48]:

"Verdicts that are silent as to the degree [of homicide] are imperfect and void, because it is impossible for the court to determine from such a verdict what punishment the jury intended to inflict upon the accused, and therefore impossible for the court to pronounce such a judgment on such a verdict, because the punishment had not been fixed by the jury. *But such is not the case at all where the jury returns a verdict of guilty and fixes a punishment which as clearly indicates the degree of murder as if the degree had been expressly named in the verdict.* Here the jury in the Ruck case did not expressly name the degree of murder in its verdict of which it found Ruck guilty, but it found him guilty and fixed his punishment at death, thus showing that they found and intended to find him guilty of murder in the first degree, *for murder in the second degree* is not punishable by death."

In the Bettis case the jury did not recite a finding that Ruck was guilty as charged. In the instant case the jury, as stated, not only found that murder had been committed, but that nature of the act made it *murder in the first degree.* The indictment charged that offense, and stated how and with what intent the crime was consummated.

I am not convinced that capital punishment as a deterrent is preferable to other means of dealing with murder. But it is the system adopted in Arkansas, and the law is not judge-made. Our duty is to review for possible errors of trial courts, where business must be transacted in greater haste than is the case where time is available for research and reflection.

It seems to me that in sending Sugin Ruck to eternity in consequence of a verdict more indefinite than the one with which we are dealing, and in embracing a technicality in the case at bar and holding that the murderer of

George Miller may try his luck before another jury because express language was omitted from a verdict that by no conceivable construction nor stretch of any man's imagination could have meant anything but what a casual reading finds in it, the scales of justice are being needlessly tilted in a direction they should not incline.[1]

Mr. Justice HUMPHREYS joins in this dissent.

---

[1] On remand the defendant was tried and again found guilty of murder in the first degree, by express language. The judgment was carried out July 31, 1942.