BYLER *v.* STATE.

4418                                             197 S. W. 2d 748

Opinion delivered December 2, 1946.

*R. W. Tucker,* for appellant.

*Guy E. Williams,* Attorney General, and *Arnold Adams,* Assistant Attorney General, for appellee.

SMITH, J. Appellant was tried under an indictment charging him with the crime of murder in the first degree, alleged to have been committed by killing Lawrence Harber, who was the sheriff of Izard county, where both appellant and deceased lived. He was found guilty of the crime charged, and the death sentence was pronounced upon the verdict of the jury from which is this appeal.

Appellant discovered, after the trial, that the presiding judge was related within the fourth degree of affinity to the deceased, who was his wife's second cousin. There was no lack of diligence on appellant's part in making the discovery. If appellant had been aware of this fact before his trial, he could not thereafter raise the question, as the law would not allow one to speculate on the outcome of the trial, and thereafter take advantage of a fact known to, but not raised by him until after an adverse verdict had been returned. *Morrow* v. *Watts,* 80 Ark. 57, 95 S. W. 988.

Affidavits were filed in support of this allegation in the motion for a new trial, the truth of which was promptly conceded by the presiding judge when the question was raised. The judge was asked to recuse

himself from hearing the motion for a new trial, which he declined to do for the reason stated by him that a new judge would not understand the many assignments of error contained in the motion. The high character of the judge is such that his explanation of his failure to recuse himself after having presided at the trial without objection, is fully credited. It was to the following effect: His wife has seven brothers, and many relatives with whom he had but little personal contact. He never thought about the deceased sheriff being a relative of his wife, as they had no social relations and the deceased had not voted for him when he was elected to office. It may be said also that the judge presided not only with ability, but with absolute impartiality.

It may be asked therefore, what difference it makes that this relationship existed between the presiding judge and the sheriff? The answer is, " 'Twill be recorded for a precedent and many an error by the same example will rush into the state. It cannot be."

Section 20 of Art. VII of the Constitution provides: "No judge or justice shall preside in the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected with him by consanguinity or affinity, within such degree as may be prescribed by law; or in which he may have been of counsel or have presided in any inferior court."

Section 2711 of Pope's Digest provides: "No judge of the circuit court, judge of the court of probate or justice of the peace shall sit on the determination of any cause or proceeding in which he is interested or related to either party within the fourth degree of consanguinity or affinity, or shall have been of counsel, without consent of parties."

We do not ordinarily think of a second cousin of one's wife as being closely related, and we might easily overlook the fact that any relationship existed in such case, as did the judge in the instant case, yet it is a relationship within a degree prohibited by the Constitution, and the statutes, and the prohibition is as clear as would

be the case of father and son. In other words, the degree of the relationship is immaterial, if within the fourth degree.

It was said in the case of *N. A. & W. R. R. Co.* v *Cole,* 71 Ark. 38, 70 S. W. 312, that: "Affinity is the tie which arises from marriage between the husband and the blood relations of the wife, and between the wife and the blood relations of the husband."

The case of *Pemiscot Land & Cooperage Co.* v. *Davis,* 147 Mo. App. 194, 126 S. W. 218, involved the competency of a juror who was a second cousin to the wife of one of the defendants in the case. The Supreme Court of Missouri held in the case cited: "That brought him within the degree of affinity, though not of consanguinity, prescribed by the statute."

In Vol. 16 of Standard Encyclopedia of Procedure on page 661, it is said: "Where the judge is related to the person upon whom the crime is charged to have been committed by the defendant, he is disqualified, though there are cases to the contrary, on the ground that such person is not a party to the action."

Two cases are cited in the notes to this text as holding contrary to the text. One of these, *Ingraham* v. *State,* 82 Neb. 553, 118 N. W. 320, held merely that the disqualification of a justice who conducted a preliminary or examining trial, was related to the prosecuting witness within the fourth degree of consanguinity would not abate the prosecution in the district court, which holding is clearly correct and is not an exception to the rule stated in the text from which we have quoted.

But the other case, that of *Newman* v. *State,* 49 Ala. 9, is an exception to the rule. That case was a prosecution for the alleged crime of burglary, and the presiding judge was connected by marriage with the owner of the building charged to have been broken into and entered. The objection to the competency of the presiding judge was disposed of in a single paragraph reading as follows: "The objection made to the competency of the presiding judge was properly overruled. He was not

interested in the cause, nor related to either of the parties. Revised Code, § 635. His relation to the prosecutor did not affect his competency.'' There was no other discussion of the subject.

But a note to the text above quoted cites a Texas case which does sustain the rule there stated. That is the case of *January* v. *State,* 36 Tex. Cr. Rep. 488, 38 S. W. 179. The case was a prosecution for the malicious killing of a hog, the property of a brother of the presiding judge. After quoting a section of the Constitution of the State of Texas, substantially the same as § 20, Art. VII of our Constitution, and a statute of that state, similar to our § 2711, Pope's Digest, the Court of Criminal Appeals of Texas said: ''The statute in our opinion disqualifies the judge, if he be the injured party, or if he be related by consanguinity or affinity within the third degree to the injured party. The proof shows beyond question that the injured party was the brother of the judge who tried the case, and it was not competent for him to entertain jurisdiction of and try said case. When W. E. Thitton (the owner of the hog) testified, the honorable judge knew that he was his brother; and when the witness swore that he was his brother, this settled the question; and the judge of his own motion should have recused himself to try said case.'' Our case of *Johnson* v. *State,* 87 Ark. 45, 112 S. W. 743, 18 L. R. A., N. S., 619, 15 Ann. Cas. 531, is indicative of the broad construction which should be given the word ''party'' as used in Art. VII, § 20, of our Constitution.

We think the Texas case is more consonant with the orderly and impartial administration of the law. If under the view of the Alabama court it be argued that the deceased sheriff cannot be a party to a prosecution for his murder, it may be answered that his estate may be augmented by a successful suit for damages for wrongfully killing him and the repercussions of a verdict finding the killer guilty of murder might have an effect upon a suit of that character, although a different judge presided at that trial, as would necessarily be the case.

Notwithstanding the fact that the trial judge acted in the utmost good faith, we are unwilling to establish the precedent of permitting a disqualified judge to preside, who makes no disclosure of his disqualification. Of course, as has been said, the disqualification may be waived, but it is not waived by one who proceeds to trial in ignorance of the fact.

It may be unfortunate that the case will have to be retried, but we think it better that a single case should be retried than to approve an improper precedent for the trial of future cases.

The judgment will therefore be reversed, and the cause remanded for a new trial.

Robins, J., dissenting. I cannot agree that justice requires the granting of a new trial to appellant.

The judge who presided over the trial in the lower court was not related to any party to the action nor was he interested in the matter so as to be disqualified. *Newman* v. *State,* 49 Ala. 9; *Ingraham* v. *State,* 82 Neb. 553, 118 N. W. 320.

An examination of the record discloses that the trial judge scrupulously safeguarded every right of the accused and saw to it that he was given a fair and impartial trial.

As to the merits of the case, it may properly be said that the admissions of appellant on the witness stand established his guilt. Appellant admitted that he knew he was being arrested by the sheriff of his county, and, instead of submitting to the arrest, as the law says he should do, appellant, according to his own testimony, resisted arrest, armed himself and slew the arresting officer. While appellant says sheriff Harber was aiming his gun at appellant when appellant fired two loads from a shotgun into the body of the sheriff, testimony on the part of the state was to the effect that the sheriff was unarmed and was holding up his hands begging appellant not to shoot him when appellant fired the lethal shots. But, if we accept appellant's own version of the matter,

he was guilty of murder. No citizen may, under the law, resist arrest, thereby bringing on a situation such as appellant says confronted him, and then claim that he killed the arresting officer in self-defense. Under our laws it is a misdemeanor to resist arrest. Section 3265, Pope's Digest. It is a felony for one to aim a weapon at an officer while resisting arrest. Section 3267, Pope's Digest.

So, according to appellant's own version of the matter, appellant was already engaged in the commission of a misdemeanor and also engaged in the commission of a felony before he took the life of the sheriff. The right of self-defense should never attach under such circumstances.

In the case of *Appleton* v. *State*, 61 Ark. 590, 33 S. W. 1066, it appeared that Appleton had killed a deputy constable who was attempting to arrest him. The defense was that the officer began firing at Appleton and Appleton shot only in self-defense. In affirming the judgment of conviction of murder, Judge RIDDICK, speaking for the court, said: "The testimony of appellant himself shows that he knew Richardson had a warrant for him, and that his purpose was to arrest him. He should therefore have submitted to the arrest." "One who, in resisting a lawful arrest, intentionally kills a person seeking to arrest him is guilty of murder." 40 C. J. S. 865. See, also, notes 29 C. J. 1093. "Where a man puts himself in a state of resistance and openly defies the officers of the law, he is not allowed to take advantage of his own wrong, if his life is thereby endangered, and set up the excuse of self-defense." 26 Am. Jur. 314.

Appellant admitted on the witness stand that the difficulty arose solely from his own defiance of the law and his own violent resistance to a lawful arrest. He was in no position to plead self-defense. The jury's finding was responsive to the undisputed evidence and ought not to be disturbed.

I am authorized to state that Mr. Justice McHANEY and Mr. Justice MILLWEE concur in this dissent.