Downs *v.* State.

4954                                330 S. W. 2d 281

Opinion delivered December 21, 1959.

[Rehearing denied January 18, 1960]

*Norris Webb, Penix & Penix,* for appellant.

*Bruce Bennett,* Atty. General by *Russell J. Wools,* Asst. Atty. General, for appellee.

PAUL WARD, Associate Justice. Appellant, Curtis Downs, being charged with the crime of robbery, was tried, convicted, and sentenced by the trial court to 18 years in the penitentiary. Upon appeal appellant does not seriously challenge the sufficiency of the evidence to support the conviction.

There is substantial evidence in the record to show that appellant entered the Farmers' State Bank of Jonesboro at Lake City on September 5, 1958, with a gun; that he forced one of the bank employees to place $14,-841.00 in bills belonging to the bank in his brief case; that he left the bank with the money in his car; that he was followed and later apprehended; that he was thereafter identified as the person who robbed the bank; that the amount and description of money mentioned above was found in a brief case in the car which he had been driving.

The able attorneys appointed by the trial court to represent appellant have set out in their brief several assignments of error on which they rely for a reversal. An examination of the motion for a new trial reveals that all assignments of error contained therein are covered by the Points set out in appellant's brief. We proceed now to a consideration of those points.

*One.* Responsive to appellant's plea of insanity, the trial court gave its Instruction No. 8 which reads as follows: "The defense of insanity cannot avail in this case unless it appears from a preponderance of the evidence, first, that at the time of the robbery the

defendant was under such a defect of reason from disease of the mind as not to know the nature and quality of the act he was doing; or, second, if he knew it, that he did not know that what he was doing was wrong; or, third, if he knew the nature and quality of the act, and knew that it was wrong, then he was under such duress of mental disease as to be incapable of choosing between right and wrong as to the act done, and unable, because of the disease, to resist the doing of the wrong act which was the result solely of his mental disease''. It is appellant's contention that this court ''should adopt a more realistic test for determining criminal insanity'' and, in this connection, it was also contended that the trial court erred in refusing to give appellant's Requested Instruction No. 1. This Requested Instruction reads as follows: ''You are instructed that an accused is not criminally responsible if his unlawful act was the product of mental disease or mental defect. Therefore, if you find from a preponderance of the evidence that even though the defendant, Curtis Downs, committed the acts of which he stands accused, if such acts were the product of, or were caused by, a mental disease or a mental defect of Curtis Downs, then you will find the defendant not guilty''.

We have carefully considered several references which appellant makes to certain psychiatric authorities and to what they term the New Hampshire rule promulgated in the case of *Durham* v. *United States*, 214 F. 2d 862. Without attempting to pass on the merits of these citations and authorities we feel inclined and bound to follow the rule heretofore announced by our own Court. The instruction given by the trial court in this case, above copied, is set out almost verbatim in the case of *Bell* v. *State*, 120 Ark. 530, 180 S. W. 186, at Page 533 of the Arkansas Report. Immediately following the above mentioned instruction the Court, in the *Bell* case, stated: ''The first and second of the above tests were approved by this court in *Casat* v. *State, supra*, (40 Ark. 511) and *Williams* v. *State, supra*, (50 Ark. 511, 9 S. W. 5) and the last test was approved in *Green* v. *State*, 64 Ark. 523-534 (43 S. W. 973), *Williams* v. *State, supra*,

*Metropolitan Life Insurance Co.* v. *Shane,* 98 Ark. 132 (135 S. W. 836). These tests are in accord with the great weight of modern authority". We do not find that the above decision has been reversed or modified.

*Two.* Appellant says: "The jury should have been instructed that if they acquitted the defendant on the grounds of insanity to so state in their verdict", calling our attention to Ark. Stats., Section 43-2135. This section reads: "If the defense be the insanity of the defendant, the jury must be instructed, if they acquit him on that ground to state the fact in their verdict". No such instruction was given by the trial court in this case. If it be conceded that it was error for the trial court to fail to give such instruction it appears to us that it was a harmless error since the jury did not acquit appellant. Moreover, we find that no proper objection and exception was saved. Such being the case there is nothing for this court to review on appeal on this particular point. See: *Hicks* v. *State,* 225 A r k . 916, 287 S. W. 2d 12; *Ford* v. *State,* 222 Ark. 16, 257 S. W. 2d 30; and *Napier* v. *State,* 220 Ark. 208, 247 S. W. 2d 203.

*Three.* Dr. E. I. Shaw, a psychiatric physician on the staff of the State Hospital at Little Rock, was a witness for the State and gave testimony relative to appellant's sanity as determined in the Hospital staff meetings. Upon being asked how the examination was made Dr. Shaw gave this answer: "We proceed with interviews with the patient and then you order any ancillary support you need, such as laboratory, X-rays e.e.g.'s, psychological and neurological examinations, and then you compile all your data, and then you present your case to the staff".

"Q. Does the whole staff vote on them and render an opinion?

Mr. Penix: I object.

A. Yes, sir.

Mr. Penix: I want to dictate my objection. 'It is a basic precept of American jurisprudence a defend-

ant has a right to confront any witness testifying against him. It is part of the Constitution of this State. It is the worst, rankest kind of hearsay'.

Court: He may testify as to the method of procedure. As to what any other particular member of the staff did, the objection is sustained".

Later on Re-Direct Examination of Dr. Shaw the following occurred:

"Q. Then the defendant Downs was actually present at the staff meeting?

A. Yes, sir.

Q. At that staff meeting, how many doctors were present?

Mr. Penix: I object to that. The Constitution prohibits that.

Court: Overruled and exception noted to that particular question.

Q. How many doctors were present?

A. 14.

Q. Did all the doctors there have an opportunity to ask questions and interview this defendant Downs in the presence of all of the 14 doctors?

A. Yes, sir.

Mr. Penix: I object again to this.

Court: Overruled.

Mr. Penix: Exception.

Q. It was your separate diagnosis and the joint diagnosis he was without psychosis?

A. Yes, sir.

Q. If he had needed treatment, you would have asked for a 241 to have him committed, wouldn't you?

A. Yes, sir.

Mr. Penix: I object to leading and asking what the other doctors found, who are not present for cross-examination.

Court: Overruled.

Mr. Penix: Exception.''

The essence of appellant's contention on this point appears to be that it was a flagrant violation of the hearsay rule and also a denial of his right to be "confronted with the witness against him" guaranteed under Article 2, Section 10 of the Arkansas Constitution and the U. S. Constitution, Amendment 6, to allow Dr. Shaw to testify with reference to the report compiled by himself and the other members of the Hospital staff. This point was discussed at length and decided against appellant's contention in the case of *Nail* v. *State,* decided by this Court November 2, 1959, 231 Ark. 70, 328 S. W. 2d 836. See also: *Gerlach* v. *State,* 217 Ark. 102, 229 S. W. 2d 37 and *Leggett* v. *State,* decided March 31, 1958, 228 Ark. 977, 311 S. W. 2d 521.

Article 2, Section 10, of our Constitution says that the accused shall enjoy the right to be confronted with the witnesses against him. We explained at length in the *Nail* case, *supra,* how and why that right is not impaired by Initiated Act 3 of 1936, Section 12, which allows a hospital report or staff report to be introduced in a sanity hearing, into evidence by the doctor who prepared said report. Since said Section 12 deals with such an important constitutional guarantee of a personal nature everyone, particularly this Court, should be on guard to see that this guarantee is protected. Likewise the rule against hearsay evidence is vitally important and should also be protected against inroads by piecemeal. The question can arise then, as it does in this case, as to what safeguards and limitations this Court should place around the introduction of a report which in fact reflects the view and findings of several people. As a general rule it appears fundamental that the witness by whom the report is introduced into evidence should be permitted to testify only to matters

within his own knowledge and not to what some member of the staff reported to him concerning the defendant's mental status. On the other hand, we are unable to see how testimony regarding the composition of the hospital board or the procedural methods of the staff, if such testimony is within the personal knowledge of the witness, violates either Article 2, Section 10 of the Constitution or the hearsay rule. This character of testimony is not "against" an accused. This was apparently the view expressed by the trial court and we think it was correct. Tested by this view we find no reversible error shown by the record set out above. If, as appellant contends here, the State makes improper references to such questioned testimony in its argument to the jury, that raises an entirely different matter which is within the control of the trial judge.

_Four._ Dr. Shaw, in response to a question, testified that appellant could distinguish between right and wrong. At another time the doctor stated that appellant was without psychosis and the court asked him if, in making his diagnosis, he was following the legal definition of insanity or insanity as defined by the Supreme Court of Arkansas. When the doctor answered in the affirmative, appellant objected on the ground that the doctor was being allowed to draw legal conclusions. Regardless of whether or not it was improper for the court to allow him to make the answer he did, no question is presented to this Court for our determination because the record fails to show that appellant obtained any ruling of the court and also failed to save any exceptions.

_Five._ It is here contended by the appellant that it was error for the trial court to permit the Prosecuting Attorney to make a final argument after the defense had waived its argument. The record shows that after the Prosecuting Attorney had finished his first argument the attorney for appellant stated that he waived any argument. After the court had indicated that it would permit the State to make another argument anyway, appellant objected and asked to be heard in Chambers.

After the conference appellant, without further objection, proceeded to make an argument before the jury. We have no record of what took place at the conference between the court and the attorneys and so must presume that appellant waived any objections which he first entertained to the procedure followed.

*Six.* It is further insisted by appellant that the court commited reversible error by making certain improper remarks and indulging in certain improper procedure in that it stated that the "irresistible impulse" rule was not applicable in Arkansas, in permitting the Prosecuting Attorney to ask numerous questions designed to show that appellant had a previous criminal record, and in interrupting his attorney while cross-examining Dr. Shaw. We have carefully examined these several contentions and find that they are too general and too indefinite to form the basis for finding reversible error. The record moreover fails to reveal proper objections and exceptions.

*Seven.* Appellant's final assignment of error is stated as follows: "The court erred in inviting the jury to let the court fix the punishment even before there was an indication the jury might disagree". The record, at Page 11, reveals that the court handed the jury three forms of verdict. One of these forms, which is the basis of appellant's objection here, reads as follows: "We, the jury, find the defendant, Curtis John Downs, guilty of the crime of robbery but are unable to agree on the punishment and leave the punishment to be fixed by the court". One of the verdict forms allowed the jury to find the defendant guilty and fix his punishment at ........... years in the penitentiary. The other form allowed the jury to find the defendant not guilty. The jury agreed to the form of verdict copied above. Arkansas Statutes Section 43-2306 reads as follows: "When a jury find a verdict of guilty, and fail to agree on the punishment to be inflicted or do not declare such punishment in their verdict, or if they assess a punishment not authorized by law, and in all cases of a judgment on confession, the court shall assess and

declare the punishment and render judgment according-
ly''. It is appellant's position that giving the form
of verdict copied above amounted to an invitation to
the jury to leave the amount of punishment to the court,
thereby committing reversible error.

We fail to see how the statute has been violated in
this case under the above facts. It appears, moreover,
from our decision that the trial court in this instance
followed not only the approved procedure but the only
safe procedure. See: *Underwood* v. *State,* 205 Ark.
864 (at Page 874), 171 S. W. 2d 304, and *Knighten* v.
*State,* 210 Ark. 248 (at Page 250), 195 S. W. 2d 47.

Finding no error the judgment of the trial court is
affirmed.

JOHNSON and ROBINSON, JJ., dissent.

JIM JOHNSON, Associate Justice, dissenting. I dissent
because the accused was denied his constitutional right to
be confronted by the witnesses against him; in this case
the doctors from the State Hospital.

This is the third of three decisions during the past few
months holding that under Article 2, Section 10, of the
Arkansas Constitution, it is not necessary that all the
doctors who participated in the examination of the defend-
ant be present at the trial for cross examination. The
other two decisions are *Leggett* v. *State,* 228 Ark. 977, 311
S. W. 2d 521; and *Nail* v. *State,* 231 Ark. 70, 328 S. W.
2d 836.

Prior to these cases this Court had consistently held
this lack of confrontation to be reversible error. Some of
the cases holding it to be error are *Smith* v. *State,* 200 Ark.
1152, 143 S. W. 2d 190; *Turner* v. *State,* 224 Ark. 505, 275
S. W. 2d 24; and *Jones* v. *State,* 204 Ark. 61, 161 S. W.
2d 173.

When a court decides to reverse its position 180
degrees, there should be sufficient reason for doing so.
The majority opinion states this point was fully discussed
in the *Nail* case, *supra,* and apparently defers thereto. The
reasoning in the majority opinion in the *Nail* case seems to
be one of logic and expediency. Quoting from that opinion:

"In the first place, only the defendant and his counsel know what defense will be relied on, and it may not be known until the day of the trial whether the defendant will plead insanity as a defense. Accordingly, it would seem most illogical, or unreasonable, to require all the doctors, who participated in any phase of the examination, to leave their varied duties and travel to some point in the state, perhaps a long distance away, solely on the possibility that the defendant might want to call them as witnesses."

Ark. Stats. 1947, § 43-1301, provides that if the defense of insanity is raised at the time of the trial, the trial judge *shall* postpone all other proceedings in the cause and commit the defendant to the State Hospital for observation. Numerically subsequent sections of the annotated statutes provide other safeguards against the problem envisioned by the *Nail* opinion.

The majority do not consider Dr. Shaw as having testified to anything done by any other doctor but only as to his personal recollections and observations. Dr. Shaw testified, under questioning by the prosecuting attorney, as to the different tests used to aid in deciding the question of sanity of this defendant. The number given and the names of these tests are very impressive and not all of them were given by Dr. Shaw. Since these were administered by different doctors, the defense should have had an opportunity to cross examine them as to the methods used. Under the reasoning used by the majority there is no error because Dr. Shaw told only what he observed, namely, that all the doctors concurred. Suppose I had been present at the consultation knowing nothing of these things. Could Dr. Shaw have not also said I concurred? That they all concurred and that this was within the personal knowledge of Dr. Shaw is not the point. The point is that they may not have known anything about what they were doing and this is the reason for the constitutional guarantee of confrontation which is actually only a guarantee that the witnesses will be subject to cross examination and under the influence of the sobering effect of the witness chair of the judiciary.

I agree that it is burdensome to require all the doctors participating in an examination to travel all over the state to testify.

I agree that it is inconvenient to the Court to have to stop the proceedings to send the defendant to the State Hospital if the defense pleads insanity on the day of the trial.

I agree that perhaps the moulders of our Constitution did not anticipate such a problem as the present one.

I also know that no law requires all the doctors at the State Hospital to participate in the examination and that they might, in order to circumvent my views, were they the majority views, just use one doctor on each examination and therefore not do as good a job as they are capable of doing.

All these things would be worthy of consideration if we were the legislative branch of government rather than the judicial.

Constituting, as we do, a Court of law, we should be bound by the express words of the constitution. Also, Ark. Stats. § 43-1302, shows that the legislature recognized the problem raised by the constitutional guarantee of confrontation:

"... Witnesses employed by the State Hospital shall be so summoned to appear as to require as little loss of time as possible from their other duties."

In this, and similar cases of late, the evidence has been heavy against the accused so one might ask what difference does it make whether we hold as we do, and one might answer as Justice Frank Smith did in *Byler* v. *State,* 210 Ark. 790, 197 S. W. 2d 748; "Twill be recorded for a precedent and many an error by the same example will rush into the State. It cannot be."

We are now feeling the adverse effects of the Uniform Post Conviction Procedure Act which has since been repealed. We should therefore move with more measured tread, lest the pendulum swing too far in the other direction.

For this and the other reasons heretofore set out, I respectfully dissent.