WARD *v.* STATE.

5073                                          370 S. W. 2d 425

Opinion delivered September 16, 1963.

*Lee Ward,* for appellant.

*Bruce Bennett,* Attorney General, by *Russell J. Wools,* Assistant Attorney General, for appellee.

PAUL WARD, Associate Justice. Appellant, William D. Ward, was sentenced to a term of three years in the state penitentiary for the crime of fondling a male child under the age of 14 years in violation of Ark. Stat. Ann. §41-1128 (Supp. 1961). On appeal appellant contends the case should be reversed because of three alleged errors. *One,* the jury was invited to let the court fix the punishment. *Two,* the argument of the prosecuting attorney was prejudicial. *Three,* the court should not have permitted

the introduction of testimony pertaining to prior and unrelated incidents. These alleged errors will be discussed in the order above mentioned.

*One.* Instruction No. 5 given, along with other instructions, when the case was submitted to the jury, reads:

"You are further instructed that if you find the defendant guilty as charged but are unable to agree upon the punishment to be imposed, you may return a verdict of guilty and leave the punishment to be fixed by the court."

Ark. Stat. Ann. §43-2306 (1947), in pertinent part and in substance provides, that when "a jury finds a verdict of guilty, and fails to agree on the punishment to be inflicted . . . the court shall assess and declare the punishment. . . ." The question then arises: When should the jurors be told they can leave to the court the responsibility of fixing the punishment—before they retire or after they find they cannot agree? The giving of a similar instruction as it was given here has been approved by us previously. See: *Knighton* v. *State*, 210 Ark. 248, 195 S. W. 2d 47; *Keese and Pilgreen* v. *State*, 223 Ark. 261, 265 S. W. 2d 542; *Downs* v. *State*, 231 Ark. 466, 330 S. W. 2d 281. In the case of *Underwood* v. *State*, 205 Ark. 864, 874, 171 S. W. 2d 304, the court seemingly indicated a preference for the procedure followed in the case under consideration—before the jury retired.

Appellant, obviously aware of the above decisions, contends however that the statute clearly indicates it is the province of the jury to first honestly endeavor to fix the punishment before they are informed they can leave the responsibility to the court. The reason given by appellant for his position is that it is human nature for a person to avoid making difficult decisions when he knows it is not necessary to do so. This line of reasoning seems to find some support in the recent case of *Edens* v. *State*, (January 14, 1963), 235 Ark. 996, 363 S. W. 2d 923, where, in commenting on the decision in the Underwood case, we said:

"Even so, we did not intend to state that the instruction should routinely be given in every case, and if the *Underwood* case has been so interpreted we take this opportunity to point out that ordinarily there is no occasion for the jury to be supplied with this information."

Thus, it appears, we have not previously announced any required rule in this regard to guide the trial courts. So, after careful consideration, we now hold that the jury should not be told initially they can let the court impose the punishment but should be told only *after* they report they have reached a verdict of guilty but are unable to agree on the punishment to be imposed. We do not reverse the trial court for failing to follow this procedure in this instance because it was not aware of what we later said in the *Edens* case, supra.

*Two.* Appellant strenuously insists the jury was prejudiced by the allegedly heated argument of the prosecuting attorney, which argument we have carefully read although it is not fully abstracted. Since we have concluded that the case must be reversed and remanded because of the error later discussed, we deem it unnecessary to comment on all the objections raised by appellant to the argument.

As stated in *Hall* v. *State*, 161 Ark. 453, 257 S. W. 61, and in many other decisions of this Court, we, recognizing that jurors are men of good sense and sound judgment, have always held that a wide range must be given to the argument of counsel and much discretion must be left to the trial court. In particular, appellant here refers to certain remarks of the prosecuting attorney to the effect that he and his deputy would receive no extra pay if appellant were convicted, and that appellant's attorney (once a deputy prosecuting attorney) would have prosecuted the appellant had the same facts been presented to him. We think the jurors were capable of assessing such arguments for what they were worth—that they had no bearing on the guilt or innocence of appellant. Consequently no reversible error has been shown.

*Three.* Finally it is contended the case must be reversed because the jury was allowed to consider evidence

intended to prove appellant had engaged in similar unnatural sex activities with other young boys on former occasions.

The statute under which appellant was convicted provides, in all pertinent parts, that it shall be unlawful for any person with lascivious intent to place his hands on the sexual part of a male under the age of 14 years. The succeeding section fixes the punishment for violation at one to five years in the penitentiary.

Appellant, age 36, went to the Beasley home at about 9:30 a.m. to install telephones. Mrs. Beasley, who was out temporarily, had left her son Tommy, age 11 (together with his brother Terry, age 8), at the house to point out the locations for the phones. Tommy stated positively that appellant fondled him two or three times on that occasion. He was corroborated in part by Terry. Appellant denied emphatically and categorically that he in any way mistreated Tommy. There was no other direct testimony to show appellant's guilt or innocence of the offense for which he was being tried. This situation obviously presented a clear-cut issue of credibility to the jury.

On behalf of appellant it was shown that he had a good reputation; that he had been post commander of the American Legion, and was now its service officer; that he belonged to the Masonic Lodge; and, that he had once served as Chapter Dad of the local DeMolay organization. On the other hand the state, evidently hoping to convince the jury that Tommy and Terry Beasley (and not appellant) had told the truth, offered testimony tending to convince the jury that appellant had, on two former occasions, indulged in similar unnatural sex relations with other boys.

We have concluded that the testimony relative to one of the incidents was clearly inadmissible and prejudicial, and calls for a reversal. Over appellant's objections and exceptions a witness was permitted to testify that some four or five years previously, during a conclave of the DeMolay organization in a gymnasium at Piggott, he saw appellant engage in some acts which he thought were

unbecoming; that appellant had one of the smaller boys kinda armed up, had his arm around him nudging him toward the south door, and he presumed he was loving the boy up a little bit—this didn't continue very long— the boy's father was present. Regarding the same occasion, another witness gave similar testimony, but neither witness saw anything approaching a violation of the statute.

We think the above testimony was most prejudicial, and we have no way of knowing to what extent it influenced the jury. It is reasonable to suppose the jury gave considerable weight to the testimony because it was given by two witnesses who, apparently, stood high in the community. One was with the Weights Division of the State Police and lived in Piggott all his life; the other was a grain broker and a member of the International Supreme Council of the Order of DeMolay, and he was also an Executive Officer of this State.

It is difficult to think of a more dangerous precedent than to sanction the type of testimony above described. It would tend to establish guilt based on suspicion alone. The jury may have attached the most lascivious motives to what could have been perfectly innocent and meaningless acts of appellant.

In respect to the other incident a different situation obtains. There, the testimony was definite and left nothing to the imagination. However, since the case may be retried, we deem it advisable to discuss a contention made by appellant here and which may be made at another trial.

In substance, appellant contends that testimony of other similar offenses is admissible only to show intent, and, that since no question of intent is presented in this case, all the testimony (regarding the previous incidents) was inadmissible. We agree that the issue of intent (on the part of appellant) is not an issue here. To sustain his point appellant relies almost entirely on what we said and held in the case of *Alford* v. *State,* 223 Ark. 330, 266 S. W. 2d 804. We said there that ''our cases very plainly

support the common-sense conclusion that proof of other offenses is competent when it actually sheds light on the defendant's intent; otherwise it must be excluded.'' The statement was correct as applied to the particular facts of that case, and the opinion shows it was to be so limited. It appears, however, in the *Alford* case and in other decisions of this Court that a different rule applies to unnatural sex cases such as in the case under consideration. In the *Alford* case we recognized this distinction in using the following language:

'' * * * where the charge involves unnatural sexual acts, proof of prior similar offenses has been received. *Hummel* v. *State*, 210 Ark. 471, 196 S. W. 2d 594; *Roach* v. *State*, 222 Ark. 738, 262 S. W. 2d 647. Such evidence shows not that the accused is a criminal, but that he has *'a depraved sexual instinct'* . . .'' (Emphasis added.)

In the *Hummel* case, *supra*, where the Court was concerned with an unnatural sex crime, testimony, relative to similar previous acts, was introduced over defendant's objection. There, on appeal, we approved the following instruction:

''You are instructed that evidence introduced by the state in this case, of a similar offense occurring prior to the offense charged in the indictment, was admitted solely for the purpose of showing the defendant's *intent, motive, habits and practices,* and you may consider it for this purpose and this purpose only. * * * '' (Emphasis added.)

In our opinion the distinction above pointed out is based on sound reasoning. If it can be shown that a person has a depraved sexual instinct or that he has the habit of indulging in unnatural sex activities such fact would tend to corroborate other testimony that he committed the unnatural offense for which he is being tried.

Likewise, we believe such testimony should not be excluded solely on the ground that it is too remote in this particular case. The question of remoteness of the incidents has not been raised by appellant on this appeal, but it could be raised on a second trial. The *general* rule is that such testimony must not be *too remote*. However, as

pointed out above, a case of this kind is not, in all respects, governed by the *general* rule. So, once it is established that a mature person has developed the proclivity to indulge in unnatural sex acts, we are not prepared or willing to say it would be erased by the lapse of 4 or 5 years.

For reasons above set out the judgment is reversed, and the cause is remanded.

Reversed and remanded.

McFADDIN, J., concurs; ROBINSON, J., dissents.

ED. F. McFADDIN, Associate Justice (concurring). I concur in the reversal. Not only was the evidence as to the gymnasium incident inadmissible, as the Majority holds; but I am of the opinion that the evidence as to the other incident (as referred to in the final paragraph of the Majority Opinion) was also inadmissible. That incident occurred more than five years before the offense for which the appellant was here being tried; and I think testimony of an incident more than five years away is too remote, and is inadmissible.

SAM ROBINSON, Associate Justice (dissenting). Of course we all make errors, and in my humble opinion the majority is making a most serious error in reversing this case. Those committing crimes through the commission of unnatural sex acts are perhaps the most dangerous of criminals. It frequently happens that such persons commit the more serious crime of murder to avoid disclosure of their sexual proclivities. One can hardly read the daily papers on any day without seeing the account of a murder committed in connection with a sex crime. Such cases have been before this court several times. *Smith* v. *State,* 205 Ark. 1075, 172 S. W. 2d 248; *Leggett* v. *State,* 227 Ark. 393, 299 S. W. 2d 59. But frequently the killer is never apprehended. He has evaded detection by killing the victim of his lust—the only witness who could identify him.

The majority concedes that evidence of other unnatural sex offenses committed by the defendant is admissible in a case of this kind, but the majority then proceeds to reverse the judgment because the State introduced evidence of what could be considered an unnatural sexual act committed by the defendant. If the defendant put his arms around the little boy and "hugged him up" in an improper manner, this would be an unnatural sexual act, and according to the rule of evidence recognized as valid by the majority, evidence of such act could be properly introduced. On the other hand, if the placing of his arms around the child was merely a friendly gesture, certainly evidence of such act would in no way be prejudicial to the defendant. It would be just like proving that he shook hands with the little boy. In these circumstances the trial court thought the evidence was admissible for what it was worth.

If the defendant's act was improper, it was admissible. If, on the other hand, it was not improper, there could be no prejudice to him. Whether the defendant's conduct indicated depraved sexual desires or merely a friendly gesture was to be argued by the lawyers in the case, but in any event, the evidence was admissible to show the jury what happened.

For the reasons set out herein, I respectfully dissent.